STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. BRIAN REDINGER AND ALAN ADRIAN, DEFENDANTS-RESPONDENTS.

Argued October 10, 1973—Decided December 4, 1973.

42

*Mr. James Mayer,* Assistant Prosecutor, argued the cause for appellant (*Mr. Sherwin D. Lester,* Bergen County Prosecutor, attorney).

*Mr. Michael B. Suffness,* Assistant Deputy Public Defender, argued the cause for respondents (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the Court was delivered by

SULLIVAN, J. This Court granted direct certification of the instant appeal while it was pending unheard in the Appellate Division to review the dismissal by the trial court of an indictment charging defendants with conspiring to pervert and obstruct justice, and a separate indictment charging defendant Redinger with two counts of perjury. For reasons hereinafter set forth, we hereby reinstate the conspiracy indictment, and the first count of the indictment charging defendant Redinger with perjury.

The case had its genesis in the issuance of a traffic citation to Alan A. Adrian charging that on May 2, 1972, on Main Street in the Borough of Ramsey, he committed the offense of careless driving.[1] On May 23, 1972, Adrian appeared in traffic court through counsel, pleaded not guilty and obtained an adjournment of the hearing until June 7 next to enable him to subpoena Brian Redinger as a witness.[2]

On June 7, Redinger appeared as a witness for Adrian and testified under oath that he and not Adrian was driving the car when the careless driving infraction took place, but that when the officer stopped them Adrian was operating the vehicle. The officer upon being asked by the court stated he "wasn't sure" Adrian was the driver when "the vehicle

---

[1]Apparently the vehicle pulled out from the curb with its wheels spinning on the pavement. ("Burned rubber.")

[2]The record shows that prior to May 2, 1972, Adrian's license had been revoked for previous traffic offenses.

took off." Consequently the judge dismissed the complaint against Adrian, and a ticket for careless driving was issued to Redinger returnable June 13, 1972.[3]

On June 9, 1972, the police obtained written signed statements from two girls to the effect that they witnessed the act of careless driving in question and that defendant Adrian, whom they both knew, was driving the car. When Redinger appeared in traffic court on June 13 he pleaded guilty to the charge of careless driving. However, the judge stated that he wanted the story under oath. Accordingly, Redinger was sworn and testified that he was driving Adrian's car at the time and "burned rubber" because he "wasn't used to the car." According to Redinger, Adrian was riding in the back seat of the car and when they got to the end of Mechanic Street, Adrian took the wheel. (Apparently at that point the officer overtook the car.) The judge then accepted Redinger's plea of guilty of careless driving and fined him $25 and costs.

It was not disclosed to Redinger at the time that the police had the statements from the two girls. However, the judge was apparently aware of these statements. He did not accept Redinger's plea of guilty without first putting Redinger under oath and having him testify that he was driving the car. He also reminded Redinger of the perjury laws of this State.

Also, there is some indication that the police, as a result of their investigation of the careless driving incident, had decided to charge Adrian and Redinger with criminal conduct if Redinger adhered to his story that he was the driver. The record shows that the June 13 hearing was held at night and complaints charging perjury and subornation were issued the same night. It is even inferable that the complaints were prepared in advance since the municipal prosecutor, at a later date, told the county court that: "That

---

[3]Redinger had no previous record of traffic offenses.

night, [June 13], I understand from my file those individuals were handed warrants charging them with a violation of New Jersey Statute — charging them with * * * perjury." . On June 25, 1972, the complaints were referred to the Grand Jury which returned three indictments. The first charged both defendants with conspiracy to obstruct justice by agreeing to have Redinger testify falsely that he (Redinger) was the driver of the car in the case in which Adrian was charged with careless driving. The second charged that Adrian sometime between May 2, 1972 and June 7, 1972 suborned Redinger to commit perjury in the case in which Adrian was charged with careless driving. The third indictment contained two counts. The first count charged Redinger with committing perjury on June 7, 1972 in the case in which Adrian was charged with careless driving. The second count charged Redinger with committing perjury on June 13, 1972.

On defendants' motion, the trial court dismissed the indictments charging conspiracy and perjury on the ground of collateral estoppel, but denied the motion as to the charge of subornation of perjury. The court held that the question of fact as to who was driving the car at the time had been litigated at the June 7 and June 13 hearings, determined by final judgments, and that determination was conclusive on the State and barred it from relitigating the same issue against these defendants in another proceeding. However, the court ruled that the collateral estoppel did not extend to the charge of subornation of perjury as there had been no testimony or determination of fact concerning this alleged act in the prior proceedings.

██ Collateral estoppel has been described as an "awkward phrase." Essentially it means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe v. Swenson,* 397 *U. S.* 436, 443, 90 S. Ct. 1189, 1194, 25 *L. Ed.* 2d 469, 475 (1970). In *Ashe* the Supreme Court held that collateral estoppel, as

applied in the federal decisions, must be considered a part of the Fifth Amendment's guarantee against double jeopardy and binding on the states through the Fourteenth Amendment under *Benton v. Maryland,* 395 *U. S.* 784, 89 S. Ct. 2056, 23 *L. Ed.* 2d 707 (1969).

Preliminarily, we conclude that the trial judge erred in dismissing the first count of the perjury indictment against Redinger on collateral estoppel grounds. That count referred to the June 7 hearing in which Adrian was the defendant and Redinger testified as a witness. Collateral estoppel applies only where the person involved was a party in both proceedings. It does not extend to one who was only a witness in the earlier trial. *State v. McCue,* 122 *N. J. Super.* 171, 176 (App. Div. 1973).

As to the remaining charges against defendants, laying to one side, for the moment, the federal constitutional implications as to collateral estoppel — double jeopardy, raised by *Ashe v. Swenson, supra,* and considering the matter from the viewpoint of sound collateral estoppel and double jeopardy principles of New Jersey law, we conclude that these principles are not applicable on the basis of certain fundamentals laid down by this Court in *State v. Currie,* 41 *N. J.* 531 (1964).

That case held that a conviction of a defendant in a municipal court for the statutory offenses of reckless driving and leaving the scene of an accident would not, on principles of double jeopardy or collateral estoppel, bar his subsequent indictment and conviction for atrocious assault and battery based on the same driving episode.

While the gravamen of the actual decision was the intentional nature of the assault underlying the indictment, as compared with the nature of the reckless driving charge (41 *N. J.* at 544), we examined the several judicial approaches entertained to the general problem of conclusiveness of prior adjudications of criminal matters variously implicated under the headings of double jeopardy, *res judicata* and collateral

estoppel, and undertook to articulate the essence of the broad underlying philosophy inherent therein as follows, 41 *N. J.* at 539:

In applying the prohibition against double jeopardy, the emphasis should be on underlying policies rather than technisms. The primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals.

We also reviewed the cases in this State wherein initial prosecutions in municipal courts for minor offenses were sought to be followed by prosecutions for indictable offenses related in various degrees to the same transaction or episode (41 *N. J.* at 539–542). While pointing out that in several such cases the later prosecutions were held precluded by previous convictions,[4] we observed that such cases "reached results which were on their facts entirely fair and consistent with reasonable expectations in the light of the constitutional and common law goals. But they [such cases] never intended to convey the thought that every magistrate's determination, no matter how minor the offense charged before him, will necessarily preclude a subsequent criminal prosecution based in whole or in part on the same activity, no matter how aggravated the crime charged." (41 *N. J.* at 541). In *Currie*, we cited *State v. Shoopman*, 11 *N. J.* 333 (1953), as an example of denial of conclusiveness to an earlier adjudication where not contrary to the reasonable and fair expectations of the accused. In *Shoopman*, a conviction of reckless driving under the Motor Vehicle Act was ruled not to bar prosecution for causing death by automobile in violation of the Crimes Act. A later case noted that *Shoopman* was "based upon the incongruous disparity between a crime involving a death and a mere violation of a traffic statute." *State v. Mark*, 23 *N. J.* at 169.

We further observed in *Currie, supra*, 41 *N. J.* at 543:

[4] E. g., *State v. Labato*, 7 *N. J.* 137 (1951) ; *State v. Mark*, 23 *N. J.* 162 (1957) ; *State v. Dixon*, 40 *N. J.* 180 (1963).

Motor Vehicle Act violations are generally tried quickly and informally before local police magistrates who are in some instances not even attorneys at law. The evidential presentation may be very limited and the legal representation may likewise be very limited or entirely absent. The maximum fines and terms of imprisonment are minor in comparison to those fixed for violation of our Crimes Act and indeed they are even much lower than those which may be imposed for violation of our Disorderly Persons Act. The defendant, if found guilty, may for the most part anticipate the imposition of a moderate fine. In the light of these circumstances, the refusal to permit the proceeding before the magistrate to bar subsequent criminal prosecution for the death or the serious injury caused by the defendant is readily comprehensible. The elements of oppression or harassment historically aimed at by the constitutional and common law prohibition are not significantly involved; and permitting the second prosecution would not violate the reasonable expectations attendant upon the first proceeding while barring it would operate with gross unfairness to the State.

In essence, we conclude that if federal constitutional principles do not preclude it, we should apply the rationale of *Currie* to the present case and hold that it could not reasonably be said to lie within the fair expectation of these defendants that acquittal or conviction in the municipal court of the simple statutory offense of careless driving would immunize them from prosecution for the entirely disparate, chronologically separated and far more serious crimes of perjury and conspiracy to obstruct justice in the municipal court proceedings. None of the "elements of oppression or harassment" imbedded in the concepts of double jeopardy and *res judicata* are significantly involved by the refusal to permit the proceeding before the municipal court to bar subsequent criminal prosecution for the more serious crime, particularly in the light of the informality and summary nature of the proceedings in that court.

*State v. Emery*, 27 N. J. 348 (1958), relied on by the trial court herein, does not call for a different result. In *Emery*, *State v. Shoopman*, *supra*, was cited to us as authority for the view that the initial prosecution — for drunk driving (which resulted in a death) — was not consequential enough to permit a fact finding therein to nullify a con-

trary finding in a later prosecution for conspiracy to obstruct justice by giving false information to the police. We held that this rationale did not apply, there being in *Emery* "no incongruous disparity between the nature and gravity of two offenses having an essential element in common." 27 *N. J.* at 360. In the instant case, on the contrary, as heretofore indicated, there is such "incongruous disparity." The essential thrust of *Emery* is recognized and will be given effect by our additional determination, herewith stated, that if Redinger is convicted of perjury or conspiracy, his conviction of careless driving shall be vacated.

Our holding disallowing operation of collateral estoppel in this case on the *Currie* rationale serves the wise end of avoiding premature confrontation with the difficult and disturbing questions as to whether, or in what circumstances, a subsequent prosecution of a criminal defendant for perjury (or a related offense), will be barred by his acquittal or conviction on the substantive charge. See Note, "Perjury by Defendants: The Uses of Double Jeopardy and Collateral Estoppel," 74 *Harv. L. Rev.* 752 (1961); *United States v. Williams,* 341 *U. S.* 58, 71 S. Ct. 595, 95 *L. Ed.* 747 (1951); *United States v. Nash,* 447 *F.* 2d 1382 (4 Cir. 1971); *People v. Niles,* 300 *Ill.* 458, 133 *N. E.* 252 (1921); *State v. McCue, supra* (where the issue was avoided by a holding that there was no adjudication of a common material fact in the two prosecutions).[5]

We turn now to the question whether *Ashe v. Swenson, supra,* requires a different result. We think not. While the United States Supreme Court in *Ashe* felt it necessary to express its determination that the double jeopardy mandate rendered the second prosecution in that case intolerable in

[5]The dilemma presented is that if a prosecution for perjury is barred, a defendant is not subject to any sanction for his false testimony at trial. Yet if a later prosecution for perjury is allowed, a prosecutor, disgruntled over an acquittal of the substantive charge, could in effect retry the case under the guise of a perjury prosecution — thus placing the defendant in double jeopardy.

terms of collateral estoppel, this was probably because under Missouri law the robbery of each of the victims during the single holdup was a separate offense. (397 *U. S.* at 446, 90 S. Ct. at 1195, 25 *L. Ed.* 2d at 477; and see footnote 10 of the opinion). However, the essential rationale of the decision was the fundamental unfairness of requiring the defendant, who was acquitted of the robbery at his first trial, to "run the gauntlet" a second time. (*Ibid*). In other words, the criminal episode was single and since defendant had been adjudicated not a party to it at the first trial, he could not be subjected to a contrary verdict at another trial.

■ We conclude that the Fifth Amendment prohibition against twice putting a person in jeopardy "for the same offense" does not apply where the "offenses" involved are as different as a substantive crime on the one hand, and perjury (or other related charge) committed at the trial of the charge of commission of that crime, on the other. We think that in such case the United States Supreme Court would limit the authority of *Ashe,* insofar as double jeopardy in the Fifth Amendment sense is concerned, at least where state court proceedings are involved.

■ Although we conclude that the prosecutions herein for the subsequent charges of perjury and conspiracy are not barred under applicable principles of state or federal law relating to double jeopardy and collateral estoppel, we think that in the interest of fundamental fairness the State should be barred from charging Redinger with having committed perjury on June 13. We hold no brief for Redinger if in fact he perjured himself on that date. However, the State should have no part in any kind of trickery. What happened at the hearing on June 13 smacks of entrapment. The police by that time had statements from two witnesses that Adrian was actually driving the car. This evidence was not disclosed to Redinger at the hearing. Instead, in effect, he was allowed to walk into a waiting charge of perjury. This was not fair play.

On the basis of the foregoing we hereby reinstate the conspiracy indictment as well as the First Count of the perjury indictment. (The indictment for subornation to commit perjury was sustained by the trial court and is not before us.)

*For reversal as modified*—Justices JACOBS, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—5.

*For affirmance*—None.