**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Douglas Franklin WRIGHT,**
**Defendant–Appellant.**

**No. 95–30054.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1996.

Decided March 7, 1996.

Michael R. Levine, Assistant Federal Public Defender, Portland, Oregon, for defendant-appellant.

Michael W. Mosman, Assistant United States Attorney, Portland, Oregon, for plaintiff-appellee.

Before: JOHN T. NOONAN, Jr., LEAVY and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

## I. FACTS AND JURISDICTIONAL SETTING

The events central to consideration of this appeal,[1] which would become known as the Warm Springs Murders, were set in motion in the Fall of 1991 when two young homeless men were approached in downtown Portland by a man offering them work outside the city. One of the young men was Randy Henry, who sometimes used the name Marty McDaniel.[2] The other was McDaniel's friend Tony Nelson. The pair accepted the man's offer and left with him in a Toyota bearing Oregon license plates.

After a brief stop at the driver's apartment in a nearby town, the trio drove to the Mt. Hood area. They then drove off the highway and into a forested area which, it turns out, was within the exterior boundaries of the Warm Springs Indian Reservation. Exiting the Toyota, the driver and Tony Nelson walked away from the car while McDaniel stood facing the opposite direction. Suddenly McDaniel heard a gunshot. Turning to the direction of the sound, he saw the driver with a long-barrelled revolver.

McDaniel did not stop to ask questions, but sprinted off barefoot through the woods to the highway where he was able to flag down a motorist named Ervie Dominguez. Dominguez drove McDaniel to a rest area and called the police. While Dominguez was calling authorities, McDaniel left the area.

Two days later, hunters found the body of Tony Nelson. The next day agents located McDaniel in downtown Portland. Following a series of interviews in the area, the FBI located a man who had been in prison with defendant and who was able to identify him as the man who had earlier picked up Nelson and McDaniel.

Using motor vehicle registration information, agents determined that defendant owned a Toyota with Oregon plates, was employed in a neighboring community, and listed an apartment as his address. McDaniel identified the apartment house, but was unable to pick defendant out of a photo line-up. While this investigation was unfolding, ballistics tests indicated that the firearm which had killed Tony Nelson had also killed an Anthony Barker, whose body had been discovered a few days before and within one mile of the location where Nelson's body was found.

Utilizing the information gathered to that point in the investigation, agents obtained a search warrant for defendant's car and apartment. The execution of those warrants produced two weapons, one of which was a .357 Sturm Ruger Blackhawk. Subsequent ballistics tests tied the .357 to both the Nelson and Barker deaths.

A cooperative effort involving state, federal and tribal officials, the Warm Springs murder investigation eventually produced four victims and a jurisdictional jigsaw puzzle. Because defendant had a prior felony conviction, his possession of the two firearms could

---

1. We construe the facts in the light most favorable to the non-moving party, here the United States.

2. Because both the government and the defendant refer to this person as "McDaniel," we use that name.

be charged in either state or federal court. Defendant and three of the victims were non-Indians, but Tony Nelson was a member of the Makah Tribe. All of the bodies had been found on the Warm Springs Indian Reservation. McDaniel placed the site of the Nelson murder there. The result was that the State of Oregon had jurisdiction over the three other victims, but the Nelson murder was purely a federal matter.

The charges against defendant thereafter proceeded as follows: (1) the felon-in-possession charges went to trial in federal court where defendant was convicted of all counts; (2) Oregon then went forward with the murder charges involving the non-Indian victims, where defendant was convicted and sentenced to death; and (3) the United States indicted defendant on the Nelson murder, which charges were headed for a bench trial before the motions leading to this appeal.

The present interlocutory appeal involves the district court's pre-trial order denying defendant's motion to dismiss the Nelson murder charges against him based on a claimed double jeopardy violation, due process grounds, and the district court's supervisory power to dismiss indictments for prosecutorial excess. We have jurisdiction over defendant's double jeopardy claim, *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977), and we affirm. We dismiss defendant's remaining claims for lack of jurisdiction.

## II. ANALYSIS

### A. *Double Jeopardy*

■ We review de novo the district court's denial of a motion to dismiss on double jeopardy grounds. *United States v. Lun*, 944 F.2d 642, 644 (9th Cir.1991).

■ Under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), double jeopardy exists if the second offense contains elements identical to, or included as a subset within, the elements of the former charge. Defendant concedes that the United States is not barred under *Blockburger* from trying him for murder after having convicted him of being a felon in possession. Defendant contends, however, that the United States should be barred from pursuing the present prosecution pursuant to a line of double jeopardy cases including *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), and *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which he contends establish a second double jeopardy test that focuses on the conduct for which the defendant was previously prosecuted rather than the elements of the previous offense.

■ Defendant's argument is foreclosed by the Supreme Court's decision in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), which overruled *Grady* and which made clear that, contrary to defendant's contention, *Brown*, *Harris* and *Vitale* did not themselves establish a same-conduct double jeopardy test. Because the test set forth in *Blockburger* is the only test for analyzing a double jeopardy claim and because defendant admits and we agree that the present prosecution is not barred under this test, the district court properly denied defendant's motion to dismiss on double jeopardy grounds.

### B. *Remaining Claims*

Defendant, contending that the federal government has wrongfully conspired with the State of Oregon to subject him to successive prosecutions, also appeals the district court's refusal to dismiss his indictment under the due process clause and pursuant to the district court's inherent supervisory power. Because these claims do not fall within the narrow category of claims reviewable on interlocutory appeal pursuant to the doctrine set forth in *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977), we dismiss the remainder of defendant's appeal for lack of jurisdiction.

AFFIRMED IN PART AND DISMISSED IN PART.