**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roy Brooks STODDARD, Defendant–**
**Appellant.**

**No. 96–30095.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1996.

Decided April 22, 1997.

---

Mark E. Vovos, Spokane, WA, for defendant-appellant.

Earl A. Hicks, Assistant United States Attorney, Spokane, WA, for plaintiff-appellee.

Before: JOHN T. NOONAN Jr., THOMPSON and KLEINFELD, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge.

In 1995, Roy Brooks Stoddard was charged with various crimes related to a conspiracy to grow, produce, and distribute marijuana. Stoddard moved to dismiss one of the charges as barred by double jeopardy, and several other charges as barred by collateral estoppel. The district court rejected

Stoddard's motion, and Stoddard filed this interlocutory appeal.

We have jurisdiction over Stoddard's appeal under the *Abney* exception to 28 U.S.C. § 1291,[1] and we reverse.

## FACTS

### I. 1990 Indictment (1990 conspiracy)

In analyzing the double jeopardy and collateral estoppel issues, we must look back to 1990. On September 7, 1990, Stoddard and two codefendants, Walter Edward Zachman and Roger Karl Lokken, were indicted by a federal grand jury. Count 9 of the 1990 Indictment charged Stoddard, Zachman, and Lokken with violating 21 U.S.C. §§ 841(a)(1) and 846 between May, 1989 and August 30, 1990, by knowingly conspiring to: (1) possess, with the intent to distribute, marijuana; and (2) distribute marijuana. Count 10 of the 1990 Indictment charged Stoddard, Zachman, and Lokken with knowingly attempting to possess, with the intent to distribute, over 100 kilograms of marijuana on August 31, 1990, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

The 1990 case went to trial. During trial, Ramon Lopez, a confidential government informant, testified that Stoddard asked Lopez to obtain between 300 to 500 pounds of marijuana in the spring of 1989. Stoddard told Lopez he was apprehensive about engaging in the sale with a stranger. Stoddard suggested instead that his friend, Zachman, buy a smaller amount of marijuana as a test-with the understanding that, if the test-purchase was consummated, Stoddard and Zachman would purchase 500 pounds of marijuana per week. Lopez agreed to make arrangements for Zachman to meet with undercover agent Ruben Garcia, who posed as a marijuana supplier. Between May 24, 1989 and June 14, 1989, Garcia and Zachman negotiated the terms for buying up to 1,000 pounds of marijuana per week.

On May 25, 1989, Garcia met Zachman at the airport in Wenatchee, Washington to show Zachman a sample of marijuana. On June 2, 1989, in Seattle, Garcia showed Zach-

---

1. *See Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (holding that issues of double jeopardy may be appealed before final judgment).

man 500 pounds of marijuana. Negotiations then broke down between Garcia and Zachman.

Several months later, Stoddard told Lopez that he was again interested in buying large quantities of marijuana. To prove he had the money to make a large purchase, Zachman guided Lopez to Lokken's mountain cabin where he showed Lopez $100,000 in Canadian currency. Zachman indicated he was interested in buying 500 pounds of marijuana.

On August 31, 1990, Stoddard dropped Zachman off at a store where he was picked up by Lopez. Lopez drove Zachman to a hotel where Zachman negotiated the sale with undercover DEA agent Eric Levy. Zachman then went to Stoddard's truck in Wenatchee, Washington, and took out a paper bag containing $74,000. When he returned to the hotel and paid for the marijuana, he was arrested. The government subsequently arrested Stoddard and Lokken.

After trial, a jury acquitted Stoddard on all ten counts of the 1990 Indictment, including the marijuana conspiracy and possession charges.

## II. 1995 Indictment (1995 conspiracy)

On November 7, 1995, Stoddard, Zachman, Lokken, and fifteen other defendants were charged in a 42–count indictment. Count 2 of the 1995 Indictment charged Stoddard and his codefendants with knowingly conspiring to manufacture, possess with intent to distribute, and distribute marijuana between January 1, 1985 and October 12, 1995. Counts 40–42 of the 1995 Indictment charged Stoddard and his wife, Jacqueline L. Stoddard, with willfully making and subscribing false income tax returns for the tax years ending in 1989, 1990, and 1991.

The government began its second investigation of Stoddard and his codefendants in May of 1992, when border patrol agents arrested a suspected illegal alien at the Canada–United States border. The alien told government officials that he and four other couriers routinely transported marijuana from the United States to Canada for Stoddard.[2] According to the alien, the couriers also drove the Canadian cash proceeds from the sale of marijuana back into the United States. The courier stated that, from late May 1991 to November 24, 1991, he had driven loads of marijuana to Canada on a biweekly basis. After November 24, 1991, he drove loads to Canada every two to three weeks.

The courier also led the government to the home of Jerry Montgomery and Susan Piccardo, two people he stated were involved in Stoddard's operation. Montgomery and Piccardo subsequently agreed to cooperate with the government. They told the government that Stoddard had grown marijuana in Tonasket, Washington since 1985. According to Montgomery, Lokken and Zachman had delivered a load of marijuana to Montana in the winter of 1987. In September, 1991, Montgomery twice picked up marijuana for Stoddard.

Later in 1991, Stoddard financed and supplied equipment to Montgomery to grow marijuana. Both Stoddard and Lokken took a share of Montgomery's profits from the sale of Montgomery's marijuana crop. Lokken himself grew marijuana, and on several occasions, replanted the marijuana starts produced by Montgomery.

Montgomery described several conversations with Stoddard during which Stoddard told him the names and activities of several other marijuana growers and sellers involved in the alleged conspiracy. Montgomery was also present at several discussions between Stoddard and his alleged coconspirators during which the manufacture, transport, and sale of marijuana were discussed.

Montgomery told officials that Stoddard had traveled to Nevada to exchange Canadian currency for Federal Reserve Notes. Montgomery believed that Stoddard instituted all of the conspiracy's procedures for exchanging marijuana for Canadian currency. Montgomery and Piccardo stated that they had exchanged thousands of dollars in Canadian currency for Stoddard on several occasions. Both Lokken and Stoddard often

---

**2.** For purposes of this appeal, we accept the government's statement of facts as true.

backpacked or otherwise transported marijuana into Canada.

In May 1992, government officials found another one of the couriers who transported marijuana for Stoddard. That courier told government agents that Stoddard had been trafficking in marijuana since 1985. The government subsequently spoke with others who either grew marijuana for Stoddard or transported Canadian currency proceeds from marijuana sales. These people described a scheme in which Stoddard bought marijuana from local growers, smuggled it into Canada, sold it, and converted the proceeds into American dollars.

## DISCUSSION

### I. Double Jeopardy

■ Stoddard contends that, because he was acquitted of Counts 9 and 10 of the 1990 Indictment, the government was barred by double jeopardy from charging him with conspiracy to manufacture and distribute marijuana in Count 2 of the 1995 Indictment.[3] We review de novo whether Stoddard's double jeopardy rights were violated. *See United States v. Scarano*, 76 F.3d 1471, 1474 (9th Cir.1996).

■ The double jeopardy clause provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S.Const., amend. V. The clause bars the government from dividing a single conspiracy into separate charges and

pursuing successive prosecutions against a defendant. *United States v. Guzman*, 852 F.2d 1117, 1119 (9th Cir.1988). "[T]o determine whether two conspiracy counts charge the same offense and so place the defendant in double jeopardy," we consider five factors: (1) the differences in the periods of time covered by the alleged conspiracies; (2) the places where the conspiracies were alleged to occur; (3) the persons charged as coconspirators; (4) the overt acts alleged to have been committed; and (5) the statutes alleged to have been violated. *Guzman*, 852 F.2d at 1120.

### A. Time Periods

The 1990 Indictment charged Stoddard with a marijuana distribution conspiracy during the time span between May 1989 and August 31, 1990. The 1995 Indictment also charged Stoddard with a marijuana distribution conspiracy, but stated that the conspiracy occurred between January 1, 1985 and October 12, 1995.

The 1995 Indictment implies that Stoddard and his coconspirators entered into an agreement in 1985 that spawned a series of activities beginning in 1985 and ending in 1995. Pursuant to the 1990 Indictment, however, Stoddard was already charged and tried for the conspiracy's activities during the fifteen-month period between May 1989 and August 1990. We conclude, therefore, that there was a significant time overlap between the

---

**3.** Count 9 of the 1990 Indictment charged:

Beginning on or about May, 1989, and continuing through on or about August 31, 1990, in the Eastern District of Washington and elsewhere, Roy B. Stoddard, Walter E. Zachman, Jr., and Roger K. Lokken and others known and unknown to the grand jury did violate 21 U.S.C. § 846 in that they did willfully and knowingly combine, conspire, confederate and agree together to commit the following offenses against the United States, to wit: to possess with intent to distribute marijuana and distribute marijuana, a Schedule I controlled substance in violation of 21 U.S.C. § 841(a)(1).

Count 10 of the 1990 Indictment charged:

On or about August 31, 1990, in the Eastern District of Washington, Roy B. Stoddard, Walter E. Zachman, and Roger K. Lokken did knowingly, willfully and unlawfully attempt to possess with intent to distribute over 100 kilo-

grams of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Count 2 of the 1995 Indictment charged, in pertinent part:

That beginning on a date unknown to the grand jury but by or about January 1, 1985, until on or about October 12, 1995, in the Eastern District of Washington, and elsewhere, Roy Brooks Stoddard [and seventeen other people] ... did willfully and knowingly combine, conspire, confederate and agree together with each other and with other persons, both known and unknown to the grand jury, to commit the following offense against the United States, to wit: manufacture, possession with intent to distribute and distribute marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. 841(a)(1); all in violation of 21 U.S.C. 846.

1990 and 1995 conspiracies.[4]

## B. Location

All of the overt acts of the 1990 conspiracy took place in Wenatchee, Washington, other places in Okonogan County, Washington, and the Western District of Washington. During the trial for the 1990 conspiracy, the government also mentioned California and Mexico as the locations where Stoddard's marijuana supply originated. The government asserted in the trial on the 1990 Indictment that Canadian currency may have been used to purchase the marijuana, but did not otherwise link the 1990 conspiracy to Canada.

The government admits that some of the overt acts of the 1995 conspiracy also occurred in the Western District of Washington and Okonogan County. The government alleges that other overt acts of the 1995 conspiracy took place in the Eastern District of Washington, Canada, Idaho, Montana, California, and Nevada.

While the 1995 conspiracy was broader in scope than the 1990 conspiracy, we conclude there was a considerable overlap in the locations of the overt acts of the 1990 and 1995 conspiracies.

## C. Members

The 1990 Indictment charged three people with conspiracy: Lokken, Stoddard, and Zachman. During trial, the government mentioned that John Marcille was involved in the 1990 conspiracy—a confidential informant testified before the jury that Marcille was "involved with Roy Stoddard." The 1995 Indictment charged Lokken, Stoddard, Zachman, Marcille, and fourteen other defendants with conspiracy.

There was an overlap in membership between the two conspiracies-Stoddard, Lokken, Zachman, and possibly Marcille were involved in both conspiracies. However, as we observed in *Guzman*, the third factor does not depend on an overlap in membership alone. *See Guzman*, 852 F.2d at 1120. In *Guzman*, we acknowledged that the two conspiracies had two overlapping members. Nevertheless, because we determined that the roles of the two overlapping members in the two conspiracies were very different, we held that the third factor indicated the existence of two separate conspiracies. *Id.*

Similarly, in the present case, the roles of Stoddard, Lokken, and Zachman in the two conspiracies were very different. In the 1990 conspiracy, Stoddard acted as a spokesman for Zachman in negotiating the purchase of a large quantity of marijuana. In contrast, in the 1995 conspiracy, Stoddard allegedly masterminded an entire marijuana growing, processing, and selling scheme, in which he employed numerous couriers to transport both marijuana and currency, facilitated the growth of marijuana, and bought and sold marijuana over the course of many years and on many different occasions. Stoddard's role in the two conspiracies was thus very different.

Likewise, in the 1990 conspiracy, Lokken was only peripherally involved: he owned a cabin where cash was stored, and he accompanied Zachman to the marijuana sale. In the 1995 conspiracy, however, Lokken allegedly grew marijuana, benefited from the sale of Montgomery's marijuana, attended meetings with Stoddard to organize the entire marijuana growing and selling scheme,

---

**4.** Stoddard argues that the overlap was greater than fifteen months because, in the first trial, the jury heard evidence about Stoddard's marijuana purchase between 1985 and 1987. In *Guzman*, we held that "[t]he time period of a conspiracy is determined not by the dates alleged in the indictment, but by the evidence adduced at trial." *Guzman*, 852 F.2d at 1120; *see also United States v. Lurz*, 666 F.2d 69, 74 n. 3 (4th Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982) (indictments' indication of complete overlap between two conspiracies was misleading because evidence at trial about first conspiracy only brought first conspiracy to a

time well before the end time charged in the first indictment).

However, *Guzman*'s holding was in the context of an indictment with an ambiguous start date: the evidence introduced at trial *limited* the time period of the indictment. Here, the 1990 Indictment charged Stoddard with offenses *after* the Spring of 1989: the evidence introduced at trial *broadened* the time period of the indictment. It does not make sense to extend *Guzman*'s holding to the present case because the jury for the trial that followed the 1990 Indictment could not have issued a verdict on crimes mentioned during trial but not charged in that Indictment.

leased property to Montgomery, owned a car where marijuana was stored, exchanged Canadian currency, transported marijuana into Canada, and delivered marijuana to Montana. Like Stoddard, Lokken was only peripherally involved in the 1990 conspiracy, but assumed a much more active role in the 1995 conspiracy.

Zachman was the most pivotal member of the 1990 conspiracy: he negotiated with Garcia for the sale of marijuana, and subsequently consummated the sale. In the 1995 conspiracy, however, Zachman's role was minimal-he transported marijuana to Montana once in 1987.

Because the roles of Stoddard, Zachman, and Lokken were different in the two conspiracies, we conclude that the third factor indicates the 1990 and 1995 conspiracies were separate and distinct.[5]

## D. Overt Acts

All but one of the overt acts charged in the 1995 Indictment occurred after August 31, 1990, the last date of an overt act charged in the 1990 Indictment.[6] However, in its brief, the government indicated that it plans to introduce, during the trial for the crimes charged in the 1995 conspiracy, evidence of overt acts that occurred before the 1990 conspiracy dates. For instance, the government alleges that Lokken, Stoddard, and other conspirators transported marijuana to Montana in the winter of 1987.

Further, while the exact overt acts that the government charged in the 1990 Indictment were not charged in the government's 1995 Indictment, the nature of the overt acts in the 1990 Indictment were similar to some of the overt acts of the 1995 Indictment. The one-time sale of marijuana in the 1990 conspiracy was similar to the frequent, repetitive sale of marijuana in the 1995 conspiracy. We therefore conclude that the fourth factor indicates that the conspiracies charged in the 1990 and 1995 Indictments were the same.

## E. Statutes Violated

■ Both the 1990 and 1995 conspiracies violated the same statutes: 21 U.S.C. §§ 841(a)(1) and 846. In conducting the inquiry under this factor, however, we also consider whether the goals of the two conspiracies were similar. *See Guzman*, 852 F.2d at 1121; *see also United States v. Lorenzo*, 995 F.2d 1448, 1459 (9th Cir.1993), *cert. denied*, 510 U.S. 881, 114 S.Ct. 225, 126 L.Ed.2d 180 (1993) (stating that, while both conspiracies allegedly violated the same statute, "the goal of each conspiracy was different.").

In *Guzman*, for example, the two conspiracies violated the same statute. However, the first conspiracy's goal was to obtain and distribute a large shipment of cocaine, while the second conspiracy involved "a complex scheme to set up a cocaine processing lab to manufacture cocaine from cocaine base for later distribution." *Guzman*, 852 F.2d at 1121. We concluded in *Guzman* that the fifth factor indicated the existence of two conspiracies.

Similarly, in the present case, the goal of the 1990 conspiracy was narrow: Zachman, Stoddard and Lokken wanted to purchase marijuana from Garcia. In contrast, the 1995 conspiracy spanned several states, implicated eighteen conspirators, and involved the growth, sale, and distribution of large quantities of marijuana over a long period of time, as well as money laundering and tax evasion. Thus, while the two conspiracies charged violations of the same statute, the fifth factor indicates the existence of two conspiracies.

■ In sum, while the location, time, members, and overt acts of the two conspiracies overlapped, the overlapping members had different roles and the two conspiracies were different in scope. To determine whether the 1990 and 1995 conspiracies were, in fact, separate, we do not focus on one

---

**5.** We cannot determine whether Marcille's role was the same in the two conspiracies because the 1990 Indictment did not charge Marcille, and his involvement was mentioned only once, and somewhat generally, during the trial that followed that indictment.

**6.** Count 40 of the 1995 Indictment charged Stoddard with making and subscribing a false income tax return on April 15, 1990.

single factor, but consider all of the factors together. Our goal in the inquiry is to determine if there was more than one agreement. *See Guzman*, 852 F.2d at 1121.

In our view, the time overlap between the 1990 and 1995 conspiracies, in combination with the overlap in members and location, distinguishes the present case from *Guzman* and indicates to us that there was only one agreement between the conspirators. In *Guzman*, there was no time overlap between the two conspiracies-the first conspiracy ended before the second one began. In contrast, here, the 1995 Indictment charged Stoddard with a conspiracy beginning in 1985 and extending through 1995. The 1995 Indictment implies that Stoddard and his coconspirators entered into an agreement in 1985 that led to a series of acts over the next ten years.

Given the overlap in membership, location, and the similarity in the overt acts of the 1990 and 1995 conspiracies, the 1985 agreement must have been the starting point for the 1990 conspiracy as well. Because the government already charged Stoddard in the 1990 Indictment with a fifteen-month period of the conspiracy that originated in the 1985 agreement, we are persuaded that double jeopardy bars the government from again charging Stoddard with a conspiracy resulting from the same agreement.[7] *See United*

*States v. Vaughan*, 715 F.2d 1373, 1376 (9th Cir.1983) (observing that "[t]he double jeopardy clause seeks to assure that the defendant will not be subject to the embarrassment, anxiety, insecurity, expense and ordeal of successive prosecutions for the same offense.").

## II. Collateral Estoppel

■ Stoddard argues that the district court erred when it denied his motion to dismiss Counts 40–42 of the 1995 Indictment on collateral estoppel grounds.[8] In counts 40–42, the government charged Stoddard with making false tax statements in violation of 26 U.S.C. § 7206(1) for the tax years ending in 1989, 1990, and 1991.[9] According to Stoddard, the government was barred from litigating the issues in Counts 40–42 by Stoddard's acquittal on the marijuana conspiracy and possession charges described in Counts 9 and 10 of the 1990 Indictment.

■ Because collateral estoppel is encompassed in the constitutional protection against double jeopardy under *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), we have jurisdiction to review Stoddard's interlocutory appeal of the pretrial order rejecting his claim of collateral estoppel.[10] *See, e.g., United States v. Barra-*

---

7. Our review of the record indicates that Stoddard and his co-conspirators may have entered into a new agreement in the 1991 time frame, the object of which was to create an expanded marijuana growing, selling, and distributing enterprise. Nothing in our opinion prevents the government from charging Stoddard with such a later conspiracy.

8. Counts 40–42 of the 1995 Indictment charged: On or about the dates listed below, in the Eastern district of Washington, Roy Brooks Stoddard and Jacqueline L. Stoddard, did willfully make and subscribe joint U.S. Individual Income Tax Returns, for the calender years as listed below, which were verified by a written declaration that they were made under penalties of perjury and were filed with the Internal Revenue Service, which said income tax return, they did not believe to be true and correct as to every material matter in that the said returns failed to disclose that they were engaged in the operation of a business activity from which they derived gross receipts or sales and incurred deductions, whereas, as they then and there well knew and believed, they were required by law and regulation to disclose the

operation of this business activity, the gross receipts or sales they derived therefrom, and the deductions they incurred, all in violation of Title 26, United States Code, Section 7206(1) ... [listing of tax years ending in 1989, 1990, and 1991].

9. To prove a violation of section 7206(1), the government must demonstrate that Stoddard: "(1) filed a return, statement, or other document that was false as to a material matter; (2) signed the return, statement, or other document under penalty of perjury; (3) did not believe the return, statement or other document was true as to every material matter; and (4) willfully subscribed to the false return with the specific intent to violate the law." *United States v. Hanson*, 2 F.3d 942, 945 (9th Cir.1993).

10. It is true that, as the government argues, ordinarily, we may not review cases on appeal until a final judgment has been rendered in the district court. *See* 28 U.S.C. § 1291. However, in *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Supreme Court held that motions to dismiss on double jeopardy

gan–Cepeda, 29 F.3d 1378 (9th Cir.1994); United States v. Cejas, 817 F.2d 595, 596 (9th Cir.1987); United States v. Stearns, 707 F.2d 391 (9th Cir.1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 181 (1984); United States v. Powell, 632 F.2d 754 (9th Cir.1980). As collateral estoppel is encompassed in the constitutional protection against double jeopardy, we review de novo the district court's denial of Stoddard's motion to dismiss on collateral estoppel grounds. See Barragan–Cepeda, 29 F.3d at 1380; Scarano, 76 F.3d at 1474.

■ Under the collateral estoppel doctrine, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe, 397 U.S. at 443, 90 S.Ct. at 1194. We have defined a three-prong inquiry for determining whether collateral estoppel operates to bar a second action between two parties: (1) were the issues in the two cases sufficiently similar; (2) was the issue fully litigated in the first action; and (3) was the issue necessarily decided in the first action. Barragan–Cepeda, 29 F.3d at 1380–81; see also United States v. Hernandez, 572 F.2d 218, 220 (9th Cir.1978) (first defining three-pronged collateral estoppel inquiry).

A. Sufficiently Similar and Sufficiently Material

We first determine whether the issues in the 1990 and 1995 Indictments were sufficiently similar and sufficiently material in both actions to justify invoking the doctrine of collateral estoppel. Hernandez, 572 F.2d at 220. The main issues in the trial for the 1990 Indictment were whether Stoddard was part of a conspiracy to distribute marijuana,

and whether Stoddard had possessed marijuana.[11] To decide these issues, the jury was required to determine if Stoddard was linked to the marijuana sale made by Zachman.

The government attempted to establish that link by offering evidence proving that Stoddard owned the money used by Zachman to buy the marijuana. During trial, government witnesses testified that Zachman left the hotel room where the marijuana sale was to occur to get the money to pay for the marijuana. Zachman then went to Stoddard's truck, reached under the passenger seat, and pulled out a paper bag with $74,000 in it. He subsequently used the paper bag of money to consummate the marijuana sale.

The identical factual issue of whether Stoddard owned the $74,000 was material to Count 41 of the 1995 Indictment, which charged Stoddard with submitting false income tax returns for the tax year ending in 1990. See id. at 221 n. 3 (stating "[a]n issue on which relitigation is foreclosed may be one of evidentiary fact, of 'ultimate fact', or of law."). Before the grand jury that issued the 1995 Indictment, IRS Special Agent Craig Carpenter testified that the IRS detected Stoddard's section 7206 violation by monitoring his currency influx and expenditures. In calculating Stoddard's currency expenditures for 1990, Carpenter assumed that Stoddard owned and spent the $74,000 the government seized from Zachman on August 31, 1990. Carpenter then used the total amount of Stoddard's currency expenditures in 1990 to determine that Stoddard's income tax returns for the tax year ending in 1990 were false for the purposes of section 7206(1). Thus, the issue of whether Stoddard owned

grounds may be reviewed by courts of appeal on interlocutory appeal. Id. at 662, 97 S.Ct. at 2041–42. Later, in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court held that the doctrine of collateral estoppel applies to criminal cases as part of the constitutional protection against double jeopardy. Id. at 445–46, 90 S.Ct. at 1195–96.

**11.** Count 9 of the 1990 Indictment charged Stoddard, Lokken, and Zachman with conspiracy with intent to distribute and distribute marijuana.

The court also instructed the jury on Count 10 of the 1990 Indictment, which charged Stoddard and his codefendants with possession with intent to distribute marijuana. The court told the jury that, to succeed on Count 10, the government was required to prove, beyond a reasonable doubt, two elements:

(1) "[T]he defendants knowingly attempted to possess marijuana."

(2) "[T]he defendants attempted to possess [marijuana] with the intent to deliver over 1,000 kilograms of marijuana to another person."

the $74,000 was material to Count 41 of the 1995 Indictment.

### B. Actually Litigated

To determine whether the issue of Stoddard's ownership of the $74,000 was previously actually litigated, we "examin[e] the record" of the trial that followed the 1990 Indictment. *Hernandez*, 572 F.2d at 220. We have examined that record. It establishes that the issue was actually litigated. Both Stoddard and Lokken testified that they did not notice the paper sack containing the $74,000 used by Zachman to pay for the marijuana until Zachman returned to Stoddard's truck and pulled the sack out from under Stoddard's car seat. Stoddard also testified that he did not own the paper sack containing the $74,000. The government's confidential informant testified that Zachman showed him $100,000 in Canadian currency (equivalent to $74,000 in American dollars), and told him that was the money to be used to pay for the transaction. Further, both Stoddard and the government discussed the issue of Stoddard's ownership of the $74,000 in their closing arguments in front of the jury.

### C. Necessarily Decided

Next, we must determine if it was necessary for the jury to decide that Stoddard did not own the $74,000 in order to acquit him of all the charges in the 1990 Indictment. *See Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194. Because the "previous judgment of acquittal was based upon a general verdict," we must "examine [the] record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397

U.S. at 444, 90 S.Ct. at 1194 (internal citations and quotations omitted). We have conducted this examination.

To acquit Stoddard of Count 9, the conspiracy charge in the 1990 Indictment, the jury must have found one of three things: (1) Stoddard did not enter into an agreement with Zachman, or (2) Stoddard did not know of the conspiracy's goal, or (3) the conspiracy did not result in an overt act.[12]

Zachman's purchase of the marijuana satisfied the overt act requirement. But the jury could not have found Stoddard owned the $74,000, and still have believed he did not either agree to the conspiracy or know of its aim. If Stoddard owned the money, his ownership would have been persuasive evidence of an *agreement* between himself and Zachman. Stoddard's ownership of the money would also have been convincing evidence that he *knew* of the conspiracy's object—to sell marijuana. If the jury believed the government, and concluded that Stoddard did own the $74,000, we have no doubt the jury would also have found that Stoddard agreed to and knew about the conspiracy, and therefore, would have found him guilty of Count 9 of the 1990 Indictment.

Because the jury acquitted Stoddard on the 1990 conspiracy charge, however, the jury must have concluded he did not own the $74,000. Therefore, collateral estoppel bars the government from relitigating in the 1995 Indictment the issue of whether Stoddard owned the $74,000. To the extent Count 41 of the 1995 Indictment is based on Stoddard's alleged ownership of the $74,000, the government is barred by collateral estoppel from charging Stoddard with that Count. To the extent Count 41 is not dependent upon Stoddard's alleged ownership of the $74,000, that is, if the Count can be supported by

---

12. The jury was instructed that, in order to succeed on Count 9 of the 1990 Indictment, which charged Stoddard with conspiracy, the government was required to prove beyond a reasonable doubt:

(1) "[B]eginning on or about May, 1989, and ending on or about August 31, 1990, there was an agreement between two or more persons to commit at least one crime as charged in the indictment."

(2) "[T]he defendants became members of the conspiracy knowing of at least one of its objects and intending to help accomplish it."
(3) "[O]ne of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed."

evidence other than Stoddard's alleged ownership of the $74,000, collateral estoppel would not bar Stoddard's prosecution on that Count.

## CONCLUSION

The government is barred by double jeopardy from charging Stoddard with Count 2 of the 1995 Indictment, and to the extent that proof of the elements of Count 41 are dependent upon Stoddard's ownership of the $74,000, collateral estoppel bars Stoddard's prosecution on that Count.

REVERSED AND REMANDED.