145 F.3d 1342
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United States of America, Plaintiff-Appellee,
v.
Edward KINI, Jr., Defendant-Appellant.
 No. 97-10318.
D.C. No. CR 95-00319-SI.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: May 13, 1998.
Decided May 29, 1998.
 
 Appeal from the United States District Court for the Northern District of California, Susan Illston, District Judge, Presiding.
 Before CHOY, PREGERSON, and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In 1995, the government simultaneously filed indictments against Ed Kini in Hawaii and California. The Hawaii indictment charged Kini with conspiring with other defendants between September 1993 and December 1993 to distribute crystal methaphetamine (or "ice") in Hawaii, and listed eight substantive narcotics crimes. The California indictment charged Kini with conspiring with other defendants in California to transport cocaine and methamphetamine to Hawaii, Alaska and Colorado between June 1994 and September 1995.
 
 
 3
 Kini was tried in Hawaii first, where a jury acquitted him of all counts in 1996. Kini then moved to dismiss the California indictment on the ground that that action was barred by the Double Jeopardy Clause of the United States Constitution, by federal collateral estoppel principles, and by the Due Process Clause of the Constitution. The district court rejected all three arguments.[1] Thereafter Kini timely filed this interlocutory appeal.
 
 
 4
 We have jurisdiction over Kini's double jeopardy claim under the Abney exception to 18 U.S.C. § 1291. See Abney v. United States, 431 U.S. 651, 662, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (holding that double jeopardy issues are immediately appealable). Because the doctrine of collateral estoppel implicates double jeopardy concerns, we have jurisdiction over that claim as well. See United States v. Romeo, 114 F.3d 141, 142 (9th Cir.1997). But we lack jurisdiction to consider Kini's due process claim on this interlocutory appeal. See United States v. Wright, 79 F.3d 112, 114 (9th Cir.1996).
 
 
 5
 We review the district court's denial of Kini's double jeopardy claim de novo. United States v. Stoddard, 111 F.3d 1450, 1454 (9th Cir.1997). We also apply a de novo standard when reviewing the question of the availability of collateral estoppel. Steen v. John Hancock Mut. Life Ins. Co., 106 F.3d 904, 910 (9th Cir.1997). The parties are familiar with the factual and procedural history of this case and we will not recount it here except as necessary to explain our decision. For the reasons set forth below, we affirm.
 
 1. Double Jeopardy
 
 6
 Kini argued before the district court and now argues on appeal that the United States derived its Hawaii and California indictments by bifurcating a single, overarching conspiracy. "A single conspiracy exists where there is one overall agreement to perform a variety of functions to achieve the objectives of the conspiracy, and may include subgroups or subagreements." United States v. Guzman, 852 F.2d 1117, 1120 (9th Cir.1988) (citation omitted).
 
 
 7
 We have recognized the need to prevent the government from gerrymandering one large conspiracy into multiple smaller ones by tailoring its pleading to "permit[ ] the artificial subdivision of one conspiracy to support multiple charges of violations of a single statute." United States v. Flick, 716 F.2d 735, 737 (9th Cir.1983) (citation omitted). Accordingly, when asked to determine whether two conspiracies charged under the same statute constitute the same offense,
 
 
 8
 [w]e compare[ ] the differences in the periods of time covered by the alleged conspiracies, the places where the conspiracies were alleged to occur, the persons charged as co-conspirators, the overt acts alleged to have been committed, and the statutes alleged to have been violated.
 
 
 9
 United States v. Mayo, 646 F.2d 369, 372 (9th Cir.1981). The district court analyzed Kini's double jeopardy claim under Mayo. The court found that three of the factors (time, membership, and statutes violated) weighed in the government's favor, whereas the other two factors (location and overt acts) weighed in favor of Kini's argument that only one conspiracy existed.
 
 
 10
 Kini contends that, when the district court performed the Mayo analysis, it should have looked beyond the allegations alleged in the two indictments to the evidence introduced in the Hawaii trial. Kini is correct. When determining double jeopardy claims regarding the segmentation of conspiracies, the district court should consult "[t]he record of both proceedings ... and the findings as to identity of offenses based thereon in conjunction with the two indictments." Arnold v. United States, 336 F.2d 347, 351-52 (1964) (citations omitted). See also Guzman, 852 F.2d at 1120 (stating that "[t]he time period of a conspiracy is determined not by the dates alleged in the indictment, but by the evidence adduced at trial"); see Stoddard, 111 F.3d at 1455, 1456 n. 5 (examining the trial record to determine whether location and membership overlapped).[2]
 
 
 11
 But we disagree with Kini's contention that the district court actually confined its inquiry to a comparison of the allegations contained in the indictments. The district court stated that it examined the record--including the transcript of the Hawaii trial and the Grand Jury testimony supporting the Hawaii indictments--in consideration of Kini's double jeopardy claim. Our de novo review of the record confirms that the district court drew the correct conclusions from its assessment of the indictments and, where appropriate, the record under each Mayo criterion.
 
 
 12
 For instance, the time periods alleged in the Hawaii and California indictments did not overlap. Relying on Stoddard, the district court properly declined to consider the evidence adduced at trial on this subject. For these reasons, we agree with the district court that the time factor weighed in favor of finding multiple conspiracies.
 
 
 13
 The membership factor also belied Kini's allegation of a single, overarching conspiracy. As the district court noted, Kini was the only member named in both indictments. Despite Kini's insistence that Estes merely "took the reins" of the Robles drug-trafficking operation after Robles was incarcerated, Estes' recruitment of many new people points to a new conspiracy. For example, when Estes organized the California operation, he employed different couriers and "cooks" than had Robles. Furthermore, the roles of the key players in the two regimes were significantly different, a consideration that we have emphasized when evaluating this Mayo factor. See Stoddard, 111 F.3d at 1455. Kini allegedly was a broker of "ice" in the Hawaii conspiracy, whereas the government alleges that he has assumed the more active role of a purchaser and distributor of methamphetamine and cocaine. Paradoxically, the differences in the two organizations account for some of their overlap in membership. For example, the record indicates that Estes' operation initially could not produce the quality of methamphetamine that Robles' outfit had been able to sustain; to correct the problem, Estes brought in a "cook" from Robles' old operation, allegedly at Kini's behest. In sum, the evidence shows that the overlap was minimal and that the common members of the conspiracies either played different roles or were brought into the Estes organization to enable it to produce "ice" that rivalled that of the old Robles group.
 
 
 14
 Other evidence in the record also supported the court's disposition of the membership factor. For example, the competitive spirit and even bad blood that characterized the relationship between Robles and the members of Estes' organization belies any single conspiratorial agreement. Specifically, some of the couriers accepted work from Estes after having disputes with Robles, a fact that suggests that Robles and Estes were competitors--not co-conspirators--during the relevant times. And Meacham testified that Estes was trying to "take over" Robles' customers while Robles was in jail. Taking over customers is an adversarial, not a cooperative act: In this context "taking over" customers is not the same thing as inheriting them. Nor is taking over customers the equivalent of assuming control of an already-running operation, a distinction that Meacham underlined when he described Estes as trying to "get things going" after Robles was imprisoned. Nor was there the kind of smooth transition between the Robles and Estes operations that would lead one to believe that Estes was merely continuing an existing enterprise: When Robles left the scene, Meacham and Mamaghani allegedly persuaded Kini to buy drugs from Estes "from that point on." For these reasons, we think that the district court properly weighed the membership factor in the government's favor.
 
 
 15
 We also agree that--although both indictments charge Kini with violating 21 U.S.C. § 841(a)(1)--the goal of each conspiracy differed. See United States v. Lorenzo, 995 F.2d 1448, 1459 (9th Cir.1993) (noting that the "statutes violated" criterion of Mayo could weigh in the government's favor where "the goal of each conspiracy was different," notwithstanding that both conspiracies allegedly violated the same statute). The record confirms that the Robles operation was limited to a very particular goal: the episodic transfer of "ice" from California to Hawaii. Estes' operation, on the other hand, aspired to amass a permanent inventory of methamphetamine that could be shipped out of California on demand to Alaska, Hawaii, and Colorado. These very different goals support the inference that Robles and Estes headed different conspiracies.[3]
 
 
 16
 We note that no single factor is dispositive of whether a single conspiracy existed. Guzman, 852 F.2d at 1121. But after analyzing the factors, we conclude that the conspiracies identified in the Hawaii and California indictments are distinct. Therefore, the district court properly declined to dismiss the California indictment.
 
 2. Collateral Estoppel
 
 17
 Kini also argues, as he did before the district court, that because the Hawaii jury acquitted him of eight substantive narcotic offenses, collateral estoppel barred his trial in California for conspiracy to commit those offenses. The district court properly refused to give Kini's Hawaii acquittal preclusive effect.
 
 
 18
 The doctrine of collateral estoppel applies in criminal trials. See Ashe v. Swenson, 397 U.S. 436, 443-44, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). We use a three-pronged inquiry to determine whether collateral estoppel bars a subsequent action between two parties. First, we consider whether the issues in the two cases are sufficiently similar; second, we investigate whether the issue raised in the subsequent action was fully litigated in the first; and third, we inquire whether the issue was necessarily decided in the first action. United States v.. Barragan-Capeda, 29 F.3d 1378, 1380-81 (9th Cir.1994).[4]
 
 
 19
 For the reasons we have set forth in our treatment of Kini's double jeopardy arguments, we remain unconvinced that the Hawaii action presented the same issue as that which the government seeks to litigate in California. From that conclusion it inescapably follows that Kini's involvement in the Estes conspiracy was not fully litigated during the Hawaii action, which tried only the issue of his involvement in the Robles conspiracy. Nor do the jury instructions refer to a conspiracy or agreement to commit an offense, and in any event the prosecutor's references to "coincidences" in his closing arguments do not amount to a full litigation of the issue of Kini's alleged involvement in the Estes conspiracy. Finally, the jury need not have decided whether Kini was involved in the Estes conspiracy in order to acquit him of the substantive crimes.
 
 CONCLUSION
 
 20
 For the foregoing reasons, we affirm the district court's order in all respects.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Kini also advanced speedy trial arguments in support of his motion to dismiss, which the district court rejected. The district court also denied Kini's motion for an evidentiary hearing on these issues. We do not review those rulings because Kini does not challenge them in his appeal
 The district court granted Kini's motion to sever his trial from that of co-defendants Michael Estes, Vincent Eldridge, Forrest Isaacson, Al Mamaghari, Grey Larkin, Denise Trigo, and John Doe. Also, the district court granted Kini's motion to suppress evidence relating to the eight substantive counts of which he was acquitted. The United States does not cross-appeal either of these rulings, so we do not consider them.
 
 
 [2]
 With respect to the time period inquiry, we have carved out an exception to this general rule where the indictments alleged definite dates for the conspiracies. Under that circumstance, the court need not consider evidence adduced at trial tending to broaden the time period of the indictments. See Stoddard, 111 F.3d at 1455 n. 4
 
 
 [3]
 The district court resolved the other two Mayo criteria--location and overt acts--in Kini's favor. We agree with its analysis of those factors as well
 
 
 [4]
 Additionally, collateral estoppel will not apply unless the Hawaii judgment was final. See United States v. Kaytso, 868 F.2d 1020, 1021 (9th Cir.1988). Kini's acquittal in Hawaii is a final judgment for purposes of collateral estoppel