
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ROY BROOKS STODDARD, in his individual capacity, and as Trustee of the Roy B. Stoddard Revocable Living Trust and as a shareholder of S & N Logging, Inc. and Newman Logging, Inc., | ) ) ) ) ) ) | No.  35038-0-III |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| S & N LOGGING, INC. a Washington Corporation, NEWMAN LOGGING INC. a Washington Corporation, and DONALD D. NEWMAN, an individual, and his capacity as Trustee of the Don Newman Revocable Living Trust, | ) ) ) ) ) ) ) | |
| Respondents, and | ) ) ) | |
| S & N LOGGING, INC. a Washington Corporation, and NEWMAN LOGGING INC., a Washington Corporation | ) ) ) ) | |
| Defendants. | ) | |

FEARING, C.J. — Twenty years after he assigned shares in S&N Logging, Inc. to

the corporation and six years after the renamed corporation dissolved, Roy Stoddard sues

the corporation, the renamed corporation, and the remaining shareholder.  Stoddard seeks

an accounting for corporation affairs, a judicial dissolution of the corporation, and a distribution of its assets. The trial court dismissed the action based on a statute of limitations, RCW 23B.14.340. We affirm on the same ground.

FACTS

We purloin the facts from declarations signed by plaintiff Roy Stoddard, defendant Donald Newman, and a former attorney for defendant S&N Logging, Roger Castelda. Many of the facts hold little relevance to dismissal of the suit on the statute of limitations, but stage a confusing background needed to be sorted if a court addressed the merits of Roy Stoddard's claims.

In 1992, Roy Stoddard and Donald Newman formed S&N Logging, Inc. a Washington corporation. Other than a hint supplied by the corporate name, the record does not disclose the nature of the business of the corporation.

In 1994, S&N Logging issued twenty-five percent of its stock to Roy Stoddard in exchange for a capital contribution. The corporation issued the remaining corporate shares to its president, Donald Newman. In turn, Stoddard assigned his stock shares to the Roy B. Stoddard Revocable Living Trust (Stoddard Trust), and Newman assigned his shares to the Don Newman Revocable Living Trust (Newman Trust). Roy Stoddard and his wife Jackie were trustors, trustees and beneficiaries of the Stoddard Trust. Jackie served as corporate secretary-treasurer.

In 1995, the United States charged Roy Stoddard with crimes stemming from a

2

conspiracy to grow, produce, and distribute marijuana. *United States v. Stoddard*, 111 F.3d 1450 (9th Cir.1997). Stoddard trafficked mass quantities of Okanogan County marijuana into Canada. Stoddard remained in prison throughout the pendency of the federal prosecution and thereafter. He borrowed money from S&N Logging to pay his attorney fees. Jackie Stoddard divorced Roy while he reposed in prison. Roy Stoddard claims that Jackie began a romantic relationship with Don Newman.

During Roy Stoddard's federal trial in early 1997, Mark Vovos, Stoddard's criminal defense attorney, applied for court-appointed legal fees since Stoddard no longer possessed funds to pay fees. Presumably S&N Logging rejected Stoddard's second loan application. Vovos warned Stoddard that, with Stoddard receiving federal funds for his defense, the Internal Revenue Service would investigate Stoddard's personal assets. Stoddard then told Donald Newman and Stoddard's former wife Jackie that he must safeguard his assets from law enforcement.

According to Don Newman, Roy Stoddard, in order to retire his debt to the corporation, asked to assign his shares of stock to the corporation, at which time he would no longer assume a role in the corporation. Newman's declaration suggests that Stoddard would assign stock personally owned by him and does not recognize that the Stoddard Trust then owned the stock. According to Newman, Stoddard assigned all of his interest in S&N Logging stock and additional property to the corporation because of the debt owed to the corporation in defending the marijuana charges. He claims exhibit B

3

to his declaration confirms the assignment of the shares of stock.

Attached as exhibit D to Donald Newman's declaration is a one-page sheet that Newman characterizes as S&N Logging corporate meeting minutes. The handwritten sheet states that Roy Stoddard would assign his shares in S&N Logging to the Donald Newman Revocable Living Trust to pay for lawyer fees and ranch fees. No one signed the minutes.

Exhibit B to the Don Newman declaration is a document entitled "Assignment." According to the document, Roy Stoddard and Jackie Stoddard, on January 16, 1997, individually assigned 48,142.50 shares of stock in S&N Logging, Inc. to the corporation. The assignment is on stationery of Tonasket attorney, Roger Castelda. The assignment also covers cattle and farm equipment. Someone interlineated the first signature of Roy Stoddard on the assignment, and Stoddard signed a second time.

Exhibit C to Don Newman's declaration consists of both sides of a stock certificate. The front side of the certificate represents that Stoddard Trust owns 48,142.50 shares of stock in S&N Logging. The back side of the certificate shows a transfer of the shares, on February 6, 1997, from Roy and Jackie Stoddard to the Newman Trust. The Stoddards endorse the certificate in their individual names, not as trustees of the Stoddard Trust. A sergeant in the Spokane County jail witnessed Roy's signature. We do not understand why the Stoddards would transfer stock to the Newman Trust that it already assigned to S&N Logging. The records on appeal contain no transfer of stock

from the Stoddard Trust to either the Newman Trust or S&N Logging, unless exhibit C constitutes such a transfer.

According to attorney Roger Castelda, Mark Vovos and Roy Stoddard contacted him in January 1997. The two told Castelda that Stoddard must show that he owned no stock in S&N Logging. Castelda does not indicate whether this need to disclaim ownership extended to showing the lack of any stock owned by the Stoddard Trust. We assume that the Internal Revenue Service would investigate assets held in a revocable trust, in which Roy Stoddard was trustor, trustee, and beneficiary. We also wonder if Stoddard needed to sign a financial statement in order to gain government funds for his defense, and, if so, Stoddard disclosed his interest in the Stoddard Trust on the statement. We further question if any financial statement would demand that Stoddard disclose any recent transfers of assets.

According to Roger Castelda, he drafted an assignment of the stock certificate naming "Don Newman Revocable Living Trust" as the assignee of an unspecified number of shares of stock in S&N Logging, Inc. Clerk's Papers (CP) at 65. Nevertheless, the assignment on his stationery, exhibit B to Don Newman's declaration, favors S&N Logging.

According to Roger Castelda, he also drafted an assignment and UCC financing statement to be signed by Roy B. Stoddard and Jackie L. Stoddard in their individual capacities to document their lack of any individual ownership in the stock of S&N

Logging Inc. Castelda does not attach these additional two documents to his declaration. We do not understand why these additional documents were needed when Castelda already prepared one assignment for the Stoddards to sign. We also do not understand the purpose of the financing statement, since the record shows no lending transaction at this time. Castelda declares that, in drafting the two additional documents, he did not intend for the Stoddards to transfer the stock held by the Stoddard Trust. If the Stoddards or the trust intended to transfer the stock held by the trust, Castelda would have drafted documents to be signed by Roy B. Stoddard and Jackie L. Stoddard as trustees of the Stoddard Trust.

Donald Newman denies that Stoddard only intended to disaffirm any individual ownership of the corporation and to keep his trust's interest in the corporation. Newman is "shocked" by the declaration of Castelda. CP at 23.

Roy Stoddard claims that he never intended to assign to S&N Logging the stock owned by the Stoddard Trust. Although he does not deny signing any transfer of stock from the trust to the corporation, he does not believe he signed any transfer.

Following Roy and Jackie Stoddard's purported assignment of stock in a corporation, in which their trust, not them, owned shares, Donald Newman changed the corporate name to Newman Logging, Inc. on September 4, 1997. Jackie Stoddard also transferred her shares in 1997, and, as secretary of the company, filed an annual report on September 4, 1997, stating Roy Stoddard no longer was a shareholder. The fact that

6

Jackie Stoddard owned shares is inconsistent with other testimony that the corporation only issued shares to Roy Stoddard and Don Newman and that Roy Stoddard assigned all his shares to the Stoddard Trust.

Roy Stoddard remained in prison until 2008. Donald Newman operated Newman Logging for eighteen years with no notice from Roy Stoddard that Stoddard believed himself to be a shareholder. The Washington secretary of state administratively dissolved Newman Logging, Inc. on July 1, 2010.

Public title records indicate Newman Logging, Inc. owns at least ten parcels of real property in Okanogan County. As part of this suit, Roy Stoddard claims that the court should distribute the ten parcels and any other assets in the name of Newman Logging to the shareholders of S&N Logging and Newman Logging, including himself, during a judicial dissolution of Newman Logging.

On May 18, 2015, seven years after release from prison, Roy Stoddard, on behalf of the Roy B. Stoddard Revocable Living Trust, delivered to S&N Logging and Newman Logging a demand to review corporate records. Newman Logging refused.

PROCEDURE

On October 20, 2016, Roy Stoddard filed suit in his own capacity, as Trustee of the Roy B. Stoddard Revocable Living Trust, and as shareholder of S&N Logging, Inc. and Newman Logging, Inc., against the two corporations and Don Newman. Stoddard claimed to be a shareholder, either in his individual capacity or his capacity as trustee of

7

the Stoddard Trust, at all times during the existence of S&N Logging, Inc., and Newman Logging, Inc. Stoddard alleged that Newman violated his fiduciary duties to the corporations by failing to maintain their corporate status and by transferring assets of the corporations to Newman personally. Stoddard prayed for a declaration that he owns stock in Newman Logging, Inc. He asked for an accounting of the corporation's financial affairs and judicial dissolution of the corporation. He also sought a judgment against Donald Newman in favor of the corporation for Newman's waste of corporate assets.

S&N Logging, Inc., Newman Logging, Inc., and Donald Newman (the defendants) filed a motion to dismiss under CR 12(b)(6) and/or CR 56. The defendants contended that the secretary of state administratively dissolved Newman Logging on July 1, 2010, and, under RCW 23B.14.340, Roy Stoddard needed to file any action against the defendants within three years of July 1, 2010. The trial court agreed and dismissed the suit.

## LAW AND ANALYSIS

The trial court's order of dismissal does not expressly state whether it granted defendants' motion to dismiss under CR 12(b)(6) or defendants' summary judgment motion under CR 56. Nevertheless, the trial court reviewed, in response to the alternative motions, the declarations filed by the parties and one witness. The filing of the declarations transformed any motion to dismiss into a summary judgment motion. CR 12(b)(7).

8

A critical fact supporting the defendants' motions was the dissolution of Newman Logging, Inc. on July 1, 2010. Although Roy Stoddard pled, in his complaint, that Newman Logging became "inactive" on this date, he did not plead that the corporation suffered dissolution on the date. To the contrary, Stoddard alleged that Newman Logging, Inc. failed to dissolve within a reasonable time of its ceasing business. Therefore, we cannot rely only on the complaint in dismissing the suit.

By declaration, Don Newman averred that the Washington secretary of state dissolved Newman Logging, Inc. on July 1, 2010. His declaration attached the secretary of state's certificate of administrative dissolution. Roy Stoddard presented no contravening declaration.

Appeals courts review an order for summary judgment de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). This court applies the same standard as the trial court to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Parkin v. Colocousis*, 53 Wn. App. 649, 653, 769 P.2d 326 (1989) (quoting CR 56(c)). Based on the uncontroverted fact that the secretary of state dissolved Newman Logging, Inc. on July 1, 2010 and the filing of this suit on October 20, 2016, we affirm the trial court's grant of summary judgment.

Roy Stoddard contends that he remains a twenty-five percent shareholder of the

9

renamed corporation, Newman Logging. The defendants maintain that Stoddard failed to

file any germane cause of action before the pertinent three year statute of limitation

lapsed. RCW 23B.14.340.

RCW 23B.14.340 contemplates the survival of remedies after a corporate

dissolution, but imposes a limitation period on any suit. The statute declares:

> The dissolution of a corporation . . . by administrative dissolution by
> the secretary of state . . . shall not take away or impair any remedy available
> against such corporation, its directors, officers, or shareholders, for any
> right or claim existing, or any liability incurred, prior to such dissolution or
> arising thereafter, unless action or other proceeding thereon is not
> commenced . . . within three years after the effective date of any dissolution
> that is effective on or after June 7, 2006.

RCW 23B.14.340.

In seeking to avoid the limitation period found in RCW 23B.14.340, Roy

Stoddard relies on RCW 23B.14.050, which addresses the affairs of a dissolved

corporation. The statute reads in part:

> (1) A dissolved corporation continues its corporate existence but
> may not carry on any business except that appropriate to wind up and
> liquidate its business and affairs, including:
> (a) Collecting its assets;
> (b) Disposing of its properties that will be applied toward
> satisfaction or making reasonable provision for satisfaction of its liabilities
> or will otherwise not be distributed in kind to its shareholders, but in any
> case subject to applicable liens and security interests as well as any
> applicable contractual restrictions on the disposition of its properties;
> (c) Satisfying or making reasonable provision for satisfying its
> liabilities, in accordance with their priorities as established by law, and on a
> pro rata basis within each class of liabilities;

(d) Subject to the limitations imposed by RCW 23B.06.400, distributing its remaining property among its shareholders according to their interests; and

(e) Doing every other act necessary to wind up and liquidate its business and affairs.

(2) Except as otherwise provided in this chapter, dissolution of a corporation does not:

(a) Transfer title to the corporation's property;

(b) Prevent transfer of its shares or securities, although the authorization to dissolve may provide for closing the corporation's share transfer records;

(c) Subject its directors or officers to standards of conduct different from those prescribed in chapter 23B.08 RCW;

(d) Change quorum or voting requirements for its board of directors or shareholders; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws;

*(e) Prevent commencement of a proceeding by or against the corporation in its corporate name;*

(f) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or

(g) Terminate the authority of the registered agent of the corporation.

RCW 23B.14.050 (emphasis added).

Roy Stoddard argues that the broad phrases included in RCW 23B.14.340 "any remedy" and "any right or claim" do not apply to a shareholder suit for declaratory judgment as to shareholder standing, for a corporate accounting, for judicial dissolution, or for derivative claims. We disagree. RCW 23B.14.340 uses sweeping terms to require "any remedy and . . . any right or claim existing, or any liability incurred, [existing] prior to such dissolution or arising thereafter," be asserted within three years of the date when

11

the Washington secretary of state filed the corporation's articles of dissolution. The statute favors the corporation, shareholders, and officers.

Roy Stoddard does not argue that the express language of RCW 23B.14.340 does not apply to each of his claims. Instead, Stoddard seemingly argues, and without citing any relevant authority, that the two statutes in tandem create ambiguity in the otherwise plain language of RCW 23B.14.340. RCW 23B.14.050(2)(e) clarifies that dissolution does not prevent "commencement of a proceeding . . . against a corporation." Nevertheless, nothing in either statute identifies or creates an extended period for shareholder lawsuits beyond the period placed in RCW 23B.14.340.

## CONCLUSION

We affirm the trial court's grant of summary judgment dismissing all claims asserted by Roy Stoddard in the complaint.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Siddoway, J.

Lawrence-Berrey, J.

12