STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Philip M. CANON, Defendant-Respondent.

Supreme Court

*No. 98–3519–CR. Oral argument September 7, 2000.—Decided February 21, 2001.*

**2001 WI 11**

(Also reported in 622 N.W.2d 270.)

For the plaintiff-appellant-petitioner the cause was argued by *William L. Gansner*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-respondent there was a brief by *Alan D. Eisenberg* and *Law Offices of Alan D. Eisenberg*, Milwaukee, and oral argument by *Alan D. Eisenberg*.

¶ 1. JON P. WILCOX, J. The question presented in this case is whether the doctrine of issue preclusion bars the State from prosecuting a defendant under Wis. Stat. § 946.31(1)(a) (1997–98)[1] for allegedly committing perjury at a criminal trial where the defendant was tried and acquitted on a single issue, but where the State claims to have discovered new evidence suggesting that the defendant falsely testified regarding that issue. We conclude that it does not.

¶ 2. The State charged the defendant, Philip M. Canon (Canon), with perjury under Wis. Stat. § 946.31(1)(a) for lying at his criminal traffic trial on

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

the issue of whether he was driving his pickup truck immediately prior to being arrested for drunk driving. Canon moved to dismiss the complaint on the grounds of "collateral estoppel," or issue preclusion, and the Circuit Court for Taylor County, Judge Douglas T. Fox, presiding, granted Canon's motion.[2] The court of appeals, in a split decision, affirmed the order of the circuit court.

## I

¶ 3. The facts are undisputed for the purposes of this review. The State charged Canon with intentionally making a false statement under oath at his criminal traffic trial for operating a vehicle while intoxicated. That criminal traffic trial in March of 1998 arose from an incident on July 4, 1996, when Canon and his companion, Cary S. Pergande, were travelling through Taylor County in Canon's pickup truck and they stopped to urinate alongside the road. A Taylor County police officer approached the two men to inquire whether they were having difficulty with Canon's truck. After talking with them, the officer concluded that Canon had been drinking and driving. As a result, the State charged Canon with operating a vehicle while intoxicated, operating after revocation, and driving with a prohibited blood alcohol level.[3] At the subsequent criminal traffic trial, the sole issue was whether Canon had been the driver of the truck. Canon

---

[2] In Wisconsin, the term "collateral estoppel" has been replaced by the less confusing term "issue preclusion." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995).

[3] This was Canon's sixth charge for operating a vehicle while intoxicated and third charge for operating after revocation.

testified that he had not been driving his pickup truck, implicating Pergande instead. The jury acquitted Canon of all charges.

¶ 4. One month after the trial, a man named Antonio Que Sada sent a letter to the Taylor County authorities alleging that Canon had "boast[ed] about their recent trip up north" and that Canon told him that he, not Pergande, had been driving his truck at the time. The State then filed the present complaint charging Canon with perjury. Canon countered with a motion to dismiss, contending that the charge was barred by issue preclusion. The circuit court reasoned that because the sole contested issue at the criminal traffic trial was whether Canon had been driving and the acquittal by the jury established beyond a reasonable doubt that Canon had not been driving, the State was barred by *Ashe v. Swenson*, 397 U.S. 436 (1970), from charging Canon with lying about whether he had been driving his truck. The circuit court acknowledged that in *Ashe*, the United States Supreme Court recognized the doctrine of issue preclusion as one of the protections in the Double Jeopardy Clause, which prevents the State from trying a defendant twice for the same offense. *Id.* at 443. Therefore, the circuit court granted Canon's motion to dismiss the criminal complaint on the grounds of issue preclusion. The State appealed the circuit court's dismissal.

¶ 5. In a published opinion, the court of appeals concluded that because who was driving on July 4, 1996, had "necessarily and actually been determined in a previous litigation," the doctrine of issue preclusion applied; to allow the State to proceed would violate the double jeopardy clauses of the federal and Wisconsin constitutions. *State v. Canon*, 230 Wis. 2d 512, 522, 602 N.W.2d 316 (Ct. App. 1999). The State's argument that

a fraudulently obtained judgment "does not carry its full preclusive weight" was rejected by the court of appeals as incongruous with *Ashe*. *Id.* at 520. Consequently, the court of appeals affirmed the circuit court's order dismissing the State's complaint. *Id.* at 523.

¶ 6. This court subsequently granted the State's petition for review.

## II

■
¶ 7. The application of issue preclusion to a set of facts is a question of law, which this court reviews without deference to the lower courts. *Lindas v. Cady*, 183 Wis. 2d 547, 552, 515 N.W.2d 458 (1994). This case involves competing policies, which must be balanced in order to preserve the central principle that undergirds the Double Jeopardy Clause on one hand and the integrity of our judicial system on the other hand.[4] Therefore, before applying the law to the facts in the present case, it is appropriate to examine these competing policies.

---

[4] For a thorough analysis of issues raised by these competing policies, see James A. Shellenberger, *Perjury Prosecutions After Acquittals: The Evils of False Testimony Balanced Against the Sanctity of Determinations of Innocence*, 71 Marq. L. Rev. 703 (1988).

The legislature has expressed the importance of guarding the integrity of our judicial system through several criminal law provisions. *See* Wis. Stat. § 946.61 (Bribery of witnesses); Wis. Stat. § 946.64 (Communicating with jurors); Wis. Stat. § 946.65 (Obstructing justice); Wis. Stat. § 940.201 (Battery or threat to witnesses); Wis. Stat. § 940.203 (Battery or threat to judge). Such laws bolster the principles of honesty and fair play in our judicial system.

¶ 8. The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment,[5] provides that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.[6] This clause prevents a prosecutor from harassing a criminal defendant with multiple prosecutions. The United States Supreme Court recognized this central principle when it wrote that:

> The underlying idea [of the double jeopardy prohibition], one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187–88 (1957). Based on the above principle, this court has recognized three constitutional protections provided by the Double Jeopardy Clause: (1) protection against a subsequent prosecution for the same offense after acquittal; (2) protection against a subsequent prosecution for the

---

[5] *See Benton v. Maryland*, 395 U.S. 784, 787 (1969) (holding that the Double Jeopardy Clause of the Fifth Amendment is applicable to the states through the Fourteenth Amendment).

[6] *See* George C. Thomas III, *Double Jeopardy: The History, The Law* (New York University Press 1998) (tracing the history of double jeopardy and noting the difficulty the United States Supreme Court has had in fashioning a clear interpretation of the seemingly unambiguous language of the clause).

same offense after conviction; and (3) protection against multiple punishments for the same offense. *State v. Vassos*, 218 Wis. 2d 330, 341, 579 N.W.2d 35 (1998). Consequently, each double jeopardy claim necessitates a fact-specific analysis to determine if any of these protections are implicated.

¶ 9. On the other hand, the crime of perjury erodes the integrity of our judicial system.[7] As the United States Supreme Court declared in *United States v. Mandujano*, 425 U.S. 564, 576 (1976), "[p]erjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative." Because perjury is an egregious offense, the Wisconsin legislature enacted Wis. Stat. § 946.31(1)(a) to punish lying in court, making it a Class D felony. Criminal defendants must not be allowed to stretch the Double Jeopardy Clause in order to shelter themselves from perjury prosecutions. Such a result would undermine the intent of the legislature and engender more untruthful testimony in court. *See ABF Freight Sys. v. NLRB*, 510 U.S. 317, 323 (1994) ("False testimony in a formal proceeding is intolerable. We must neither reward nor condone such a 'flagrant affront' to the truth-seeking function of adversary pro-

---

[7] *See, e.g.*, Mark Curriden, *The Lies Have It*, 81–May A.B.A. J. 68, 69–71 (1995) (noting that "[j]udges, lawyers and experts on the court system worry that perjury is being committed with greater frequency and impunity than ever before"); Comment, *Perjury: The Forgotten Offense*, 65 J. Crim. L. & Criminology 361 (1974) (asserting that "[i]t is undenied that perjury is both a frequent and substantial threat to the effective administration of justice"); Cate Gillen et al., *Perjury*, 28 Am. Crim. L. Rev. 619 (1991) (discussing the role of the federal offense of perjury in preserving the integrity of the federal judicial system).

ceedings."). To allow the crime of perjury to go unchecked would diminish the truth-seeking function of our judicial system. As the United States Supreme Court noted, "[a]ll perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. . . .[I]t cannot be denied that it tends to defeat the sole ultimate objective of a trial." *In re Michael*, 326 U.S. 224, 227 (1945).

¶ 10. Echoing the United States Supreme Court, we previously have declared:

> [i]t is fundamental to the American system of jurisprudence that a witness testify truthfully. Without truthful testimony, it is nigh onto impossible to achieve the primary goal of our judicial system, justice. It is because the search for the truth is central to our legal proceedings that we require each witness to take an oath of truthfulness prior to testifying.

*State v. Rivest*, 106 Wis. 2d 406, 416–17, 316 N.W.2d 395 (1982). The oath that each witness is required to take prior to testifying in court is set forth in Wis. Stat. § 906.03. We have observed that the purpose of this oath "is to impress the person who takes the oath with a due sense of obligation, so as to secure the purity and truth of his or her words under the influence of the oath's sanctity." *Kellner v. Christian*, 197 Wis. 2d 183, 192, 539 N.W.2d 685 (1995). Perjury, by definition, violates this solemn oath. Consequently, we need to balance the State's efforts to eradicate perjury from our judicial system with the fundamental principle that underlies the Double Jeopardy Clause.

## III

¶ 11. Canon urges this court to protect him from the consequences of his alleged offense by ruling that *Ashe* bars the State from prosecuting him for any perjury he may have committed at his criminal traffic trial. In *Ashe*, three or four masked men broke into a dwelling and robbed six poker players. 397 U.S. at 437. After the robbery, three men were arrested nearby and a fourth man, Ashe, was arrested some distance away. *Id.* Ashe was charged with robbing one of the six poker players, but he was acquitted when some of the witnesses were unclear whether there was a fourth man, and those witnesses that thought there was a fourth man were unsure that he was Ashe. *Id.* at 438. Six weeks after his acquittal, Ashe was brought to trial again, this time for robbing a second player. *Id.* at 439. At the second trial, the same witnesses gave much stronger testimony and the state "refined its case. . .by declining to call one of the participants in the poker game whose identification testimony at the first trial had been conspicuously negative." *Id.* at 440. This time, the jury found Ashe guilty and he was sentenced to 35 years in the state penitentiary. *Id.*

¶ 12. In reviewing Ashe's conviction, the United States Supreme Court discussed the doctrine of issue preclusion. *Id.* at 443–47. The Court recognized the doctrine as part of the Fifth Amendment's guarantee against double jeopardy, explaining that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 442–43. The Court recounted that it previously had not recognized issue preclusion because under common law, "offense categories were relatively few and distinct" and "[a] single course of criminal con-

duct was likely to yield but a single offense." *Id.* at 445 n.10. But, the Court noted, "with the advent of specificity in draftsmanship and the extraordinary proliferation of overlapping and related statutory offenses, it became possible for prosecutors to spin out a startlingly numerous series of offenses from a single alleged criminal transaction." *Id.* Hence, the Court determined that the civil doctrine of issue preclusion could be applied to combat the consequences of the manifold increase in statutory offenses. *Id.* at 443–44.

¶ 13. Before analyzing the particular facts in *Ashe*, the Court cautioned that issue preclusion "is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Id.* at 444. The Court then rejected the state's attempt to prosecute Ashe for the same robbery because the issue to be determined was whether Ashe was one of the robbers, which already had been decided at his previous criminal trial. *Id.* at 446. Moreover, the Court concluded that the state "ha[d] frankly conceded that following the petitioner's acquittal, it treated the first trial as no more than a dry run for the second prosecution." *Id.* at 447. Thus, issue preclusion, as explained by the United States Supreme Court, is a doctrine to prevent prosecutorial misconduct and give finality to judicial determinations made in one criminal transaction; it is not a technicality that allows a criminal defendant to escape the consequences of false testimony. That is, issue preclusion prevents prosecutors from throwing a smorgasbord of charges at a criminal defendant, all stemming from a single criminal transaction, and hoping something will stick after several test runs. *See Bolden v. Warden, West Tenn. High Sec. Fac.*, 194 F.3d 579, 585 n.20 (5th Cir. 1999) (noting that "[a] primary concern of the Supreme Court

in *Ashe* was the prosecution's use of the first trial as a 'dry run' for the second prosecution").

¶ 14. Turning to the case at hand, we find it clearly distinguishable from *Ashe*. In *Ashe*, the defendant was being tried again based on the testimony of the same witnesses for the same criminal transaction. By contrast, in the present case, Canon is not being charged for anything that he allegedly did on July 4, 1996, on a Taylor County highway. Instead, he is being charged with what he may have done in March of 1998 in a Taylor County courtroom: he allegedly lied under oath about a material fact. The perjury charge stems from a criminal transaction distinct from the operating while intoxicated, operating after revocation, and driving with a prohibited blood alcohol level charges. *See Ashe* 397 U.S. at 453–54 (Brennan, J. concurring) (asserting that "same offence" is best defined by whether the crime arose from "a single criminal act, occurrence, episode, or transaction"). Furthermore, new evidence—the letter from Que Sada—has come to light in the present case, which was allegedly not available prior to Canon's criminal traffic trial.[8] This case does not raise the specter of a wayward prosecutor charging a criminal defendant with a startling number of offenses for the same criminal transaction, a scena-

---

[8] *But cf. Harris v. Washington,* 404 U.S. 55 (1971) (overturning state court ruling that defendant could be retried because the judge erroneously excluded evidence of identity). *Harris* is distinguishable from the present case because there the prosecutor sought to retry the defendant for the same criminal transaction. *Id.* at 56–57. Here, the State seeks to charge Canon with a new crime committed at a different time and place with new evidence that allegedly came to light after his criminal traffic trial.

rio the *Ashe* Court emphatically condemned. *See id.* at 445 n.10.

¶ 15. Canon urges this court to affirm the decision of the court of appeals because the same issue for which he was acquitted in his criminal traffic trial—who was driving the pickup truck on July 4, 1996—necessarily will be determined at his perjury trial. We do not read *Ashe* so broadly to give criminal defendants an unfettered prerogative to perjure themselves at a criminal trial where there is a single issue. Such a ruling would materially weaken our judicial system's primary truth-finding purpose. *See Brogan v. United States*, 522 U.S. 398, 402 (1998) (expressing that "[w]e cannot imagine how it could be true that falsely denying guilt in a Government investigation does not pervert a governmental function"). As Chief Judge R. Thomas Cane noted in his court of appeals dissent, "[t]o accept Canon's argument would be to allow the concept of [issue preclusion], which is designed to protect an accused from prosecutorial harassment, to be used as a shield to insulate a defendant from his own wrongdoing in fraudulently obtaining a favorable result in a criminal case." *State v. Canon*, 230 Wis. 2d at 527. We agree. Analyzing the facts in this case with realism and rationality leads us to conclude that the State may proceed with its complaint in order to address the problem of perjury in our judicial system. Thus, we reject Canon's argument.

¶ 16. Other courts likewise have observed that *Ashe* does not give defendants a license to perjure themselves. In *State v. Redinger*, 312 A.2d 129 (N.J. 1973), the New Jersey Supreme Court reached a similar result. There, two defendants were tried separately for the same reckless driving offense. *Id.* at 130. The first defendant, whose license previously had been

revoked for traffic offenses, was acquitted on the charge of reckless driving based on his defense that he was not driving at the time of the offense. *Id.* at 130–31. The second defendant, who did not have a record, subsequently was charged with reckless driving and he pled guilty to the offense. *Id.* at 131. The trial judge "stated that he wanted the story under oath" and the second defendant testified—in accordance with the testimony of the first defendant—that he was driving at the time of the incident. *Id.* The state, however, had two witnesses who contradicted the testimony of the two defendants. *Id.* The two witnesses stated that the first defendant, not the second defendant, was driving at the time of the incident. *Id.* Consequently, the state charged the second defendant with perjury. *Id.*

¶ 17. In its reasoning, the New Jersey Supreme Court scrutinized *Ashe* and asserted that there, "the criminal episode was single and since [Ashe] had been adjudicated not a party to [the criminal episode] at the first trial, he could not be subjected to a contrary verdict at another trial." *Id.* at 134. The court concluded:

> [t]he Fifth Amendment prohibition against twice putting a person in jeopardy "for the same offense" does not apply where the "offenses" involved are as different as a substantive crime on the one hand, and perjury (or other related charge) committed at the trial of the charge of commission of that crime, on the other.

*Id.* Therefore, the New Jersey Supreme Court found that *Ashe* would not bar the perjury prosecution.[9]

---

[9] The New Jersey Supreme Court did not require the evidence of perjury to be "newly discovered." In fact, the state had the statements of the two witnesses prior to the second defendant's testimony. *State v. Redinger*, 312 A.2d 129, 131 (N.J.

¶ 18. The Louisiana Supreme Court followed this reasoning in *State v. Bolden*, 639 So. 2d 721, 726 (La. 1994), and adopted a newly discovered evidence exception for such situations. There, the court ruled that the state may proceed with a perjury prosecution on an issue adjudicated at a previous trial if the prosecutor presents newly discovered evidence. *Id.* The Fifth Circuit approved of this exception in Bolden's subsequent federal habeas proceeding because it balances "the concern that the prosecution will get a 'second shot' at the defendant with the concern that the defendant will have an 'uncontrollable license' to testify falsely at the first trial, without fear of repercussions." *Bolden*, 194 F.3d at 585 n.20.[10]

¶ 19. Finally, the Minnesota Supreme Court noted this newly discovered evidence exception in a perjury case where the defendant was acquitted of a speeding charge but subsequently convicted of committing perjury at his speeding trial. The court observed that the newly discovered evidence exception was one of five different possibilities for resolving the difficult question of "when acquittal of a crime will bar the

1973). The trial judge probably knew of the statements of the witnesses for "[h]e did not accept [the second defendant's] plea of guilty without first putting [him] under oath and having him testify that he was driving the car. He also reminded [him] of the perjury laws of [New Jersey]." *Id.*

[10] Although the Fifth Circuit recognized that it was not required to review the "Louisiana Supreme Court's alternative adoption of the 'new and additional evidence' exception to later perjury prosecutions," the court decided "to address this issue for the sake of completeness." *Bolden v. Warden, West Tenn. High Sec. Fac.*, 194 F.3d 579, 585 n.20 (5th Cir. 1999). In reviewing the exception, the Fifth Circuit concluded that "[w]ere we to decide this issue, we would find that this exception is not 'contrary to' federal law as established by the Supreme Court." *Id.*

defendant's subsequent prosecution for perjury for testimony given in his own behalf at trial." *State v. DeSchepper*, 231 N.W.2d 294, 297 (Minn. 1975). The *DeSchepper* court further recognized that there is a:

> respectable body of authority which concludes that the concepts of res judicata and collateral estoppel do not apply to a judgment procured by fraud or perjury. Some suggest that Ashe does not require a state to give collateral-estoppel effect to a verdict of acquittal if the defendant committed perjury to obtain it.

*Id.* at 299. The court, however, did not have to rule on whether the newly discovered evidence exception applied in the case before it because the jury could have found the defendant's testimony unbelievable and still acquitted him of the speeding charge. *Id.* at 303. As a result, the court upheld the perjury conviction. *Id.*

¶ 20. Although there are no relevant Wisconsin cases, Canon presses this court to look to federal case law where *Ashe* has been invoked to bar a second prosecution. *See United States v. Stoddard*, 111 F.3d 1450 (9th Cir. 1997); *United States v. Hernandez*, 572 F.2d 218 (9th Cir. 1978); *United States v. Brown*, 547 F.2d 438 (8th Cir. 1977); *United States v. Nash*, 447 F.2d 1382 (4th Cir. 1971); *United States v. Robinson*, 418 F. Supp. 121 (Md. 1976); *United States v. Barnes*, 386 F. Supp. 162 (E.D. Tenn. 1973); *United States v. Drevetzki*, 338 F. Supp. 403 (N.D. Ill. 1972). However, in none of the federal cases upon which Canon relies did the government assert it had uncovered new evidence that would support a perjury complaint.

¶ 21. The only federal case cited by Canon that is somewhat analogous to the present facts is *United States v. Nash*, 447 F.2d 1382. In *Nash*, the govern-

ment alleged that the defendant lied at her trial for stealing from a mailbox. *Id.* at 1383. The defendant appealed her conviction of perjury. *Id.* Because a jury acquitted the defendant at the mail theft trial, the Fourth Circuit Court of Appeals reasoned that the jury necessarily decided that the defendant was credible. *Id.* at 1385. Therefore, under *Ashe*, the court held that the subsequent prosecution was barred because the jury in the perjury case determined that the defendant was not credible on the same issue. *Id.*

¶ 22. The majority's opinion in *Nash* did not indicate that the government presented new evidence at the perjury trial and Judge Winter, in a concurrence, asserted that his comparison of the mail theft trial transcript with the perjury trial transcript "discloses that, at the trial for perjury, the evidence was a mere rehash of the evidence adduced at the first trial." *Id.* at 1387. But while accepting the holding, the concurrence rejected the notion implicit in the majority's opinion that every time a jury finds a defendant credible, the "government is forever foreclosed from prosecuting her for perjury." *Id.* Judge Winter then observed: "In almost every criminal prosecution resulting in acquittal where the defendant has testified, it may be said that the jury passed on the defendant's credibility and found him truthful. Yet we should not encourage prevarication by saying that necessarily such a defendant is immune from prosecution for perjury." *Id.* Judge Winter further advocated the rule that if "the government produces new and additional evidence that defendant lied under oath at his first trial sufficient to permit the trier of fact to conclude beyond a reasonable doubt that perjury had been committed," the government should be able to try the defendant for perjury. *Id.* Such an exception, which balances the need to pre-

serve the statutory offense of perjury with double jeopardy protections, is what we adopt today.

## IV

¶ 23. A narrow newly discovered evidence exception to issue preclusion comports with the competing policy interests at stake in the present case. *See Bolden*, 639 So. 2d at 726; *Bolden*, 194 F.3d at 585 n.20; *DeSchepper*, 231 N.W.2d at 299; Note, *Perjury by Defendants: The Uses of Double Jeopardy and Collateral Estoppel*, 74 Harv. L. Rev. 752, 763 (1961) (recommending that courts balance the policy considerations embedded in the Double Jeopardy Clause with concern about perjury by employing a newly discovered evidence exception). We are convinced that the appropriate balance between the competing policy interests can be struck with the following narrow newly discovered evidence exception.[11] The State must establish by clear and convincing evidence[12] that: (1) the evidence came to the State's attention after a trial; (2) the State

---

[11] The deep roots of the newly discovered evidence exception in perjury prosecutions are evinced by two federal cases asserting that the government can proceed on a perjury charge where the defendant committed the alleged offense at a prior criminal trial. *See Kuskulis v. United States*, 37 F.2d 241, 242 (10th Cir. 1929); *Allen v. United States*, 194 F. 664, 667 (4th Cir. 1912) (dicta).

[12] The clear and convincing standard is the same burden that a criminal defendant must meet in order to obtain a new trial based on newly discovered evidence. *See State v. Carnemolla*, 229 Wis. 2d 648, 656, 600 N.W.2d 236 (Ct. App. 1999). Furthermore, it is the same standard that a criminal defendant must meet in order to withdraw a plea following sentencing when his or her motion was supported with new evidence. *See*

was not negligent in failing to discover the new evidence; (3) the new evidence must be material to the issue; and (4) the evidence must not be merely cumulative to the evidence which was introduced at trial. These requirements are based on the longstanding rule governing the granting of a new trial because of newly discovered evidence in a criminal case. *See Lock v. State*, 31 Wis. 2d 110, 117, 142 N.W.2d 183 (1966). This court, in *Birdsall v. Fraenzel*, 154 Wis. 48, 52, 142 N.W. 274 (1913), outlined this exception for a new trial and rejected its application where the appellant sought to introduce new evidence that allegedly impeached the other party's testimony. In doing so, this court noted that evidence "only impeaching in character" is not ordinarily "ground[s] for a new trial," but "[i]t may well be that newly discovered evidence impeaching in character might be produced so strong as to constitute ground[s] for a new trial; as for example where it is shown that the verdict is based upon perjured testimony." *Id.*

¶ 24. Today, we rule only that newly discovered evidence may allow the State, after meeting the test set out above, to proceed with a charge of perjury.[13] Such a narrowly tailored exception will enable the State to

*State v. McCallum*, 208 Wis. 2d 463, 473–74, 561 N.W.2d 707 (1997).

[13] The newly discovered evidence requirement is at the core of this limited exception for it is this factor which protects criminal defendants from having to run the gauntlet of a criminal trial a second time. *See United States v. Sarno*, 596 F.2d 404, 407 (9th Cir. 1979) (stating that "unless the subsequent perjury indictment is based upon evidence which was not available at the first trial. . .the government would be merely trying to recover from its initial failure to convince the trier of fact of the falsity of defendant's testimony at the first trial").

pursue some of the perjury in our judicial system without running afoul of a criminal defendant's Double Jeopardy Clause protections. As the United States Supreme Court recognized in *Harris v. New York*, 401 U.S. 222, 226 (1971), constitutional protections cannot be misused to the benefit of a perjurer. There, the Supreme Court ruled that a defendant's statements—made without a Miranda warning—could be used for impeachment purposes. *Id.* The Court asserted that "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense." *Id.* We similarly hold that issue preclusion cannot be perverted into a license to perpetrate perjury in our courts. However, the newly discovered evidence exception preserves the protections of the Double Jeopardy Clause by preventing a prosecutor from trying an individual twice for the same offense. This exception will alleviate some of the discomfort other courts have had in mechanically applying *Ashe* to preclude perjury prosecutions. *See United States v. Robinson*, 418 F. Supp. at 126 ("This Court is concerned that allowing an acquittal to afford any sort of insulation for perjury will be giving defendants an uncontrollable license to testify falsely.").

¶ 25. We stress that this holding does not determine whether the "new evidence" alleged in the State's perjury complaint against Canon meets the newly discovered evidence test set forth above. We determine only that the doctrine of issue preclusion does not constitutionally bar the State from pursuing perjury charges against Canon. The State still has the burden to prove by clear and convincing evidence that its alleged newly discovered evidence passes muster under each of the four prongs to the newly discovered

183

evidence test. For this reason, Canon is entitled on remand to a separate hearing at which he can put the State to its proof.[14]

## V

¶ 26. In conclusion, we hold that the State can proceed with the charge of perjury against Canon if the circuit judge finds that the new evidence proffered by the State satisfies the requirements set forth above. We therefore reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 27. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. I agree with the result reached by the circuit court and court of appeals, not the result reached in the majority opinion. I dissent from the majority opinion because it does not adequately assist litigants or the courts in resolving this troublesome issue: when does acquittal of a crime bar the State from

---

[14] We fully agree with Justice Bablitch's dissent insofar as it provides that under certain circumstances, a newly discovered evidence exception to the doctrine of issue preclusion is necessary to best balance the competing interests of finality of previously litigated issues and the truth-seeking function of our justice system. We further agree that "[t]he State should only be able to retry a defendant in very limited circumstances. . . ." However, unlike Justice Bablitch, we do not believe that the record is sufficiently developed for us to determine whether the State can meet the test set forth above.

prosecuting a defendant for perjury for testimony the defendant gave at trial on his own behalf?

¶ 28. Courts and commentators take different approaches to a defendant's suspected perjured testimony because of the difficulty of balancing the competing legal policies of truth seeking and protection against prosecutorial harassment.[1] The majority opinion attempts to balance the competing interests by adopting a "narrow newly discovered evidence excep-

---

[1] *See, e.g., State v. DeSchepper*, 231 N.W.2d 294, 297 (Minn. 1975), in which the Minnesota Supreme Court summarized the following five approaches proposed by courts and commentators concerning perjury-after-acquittal prosecutions:

1. A person acquitted of an offense is wholly immunized from subsequent prosecution for perjury based upon testimony given in his own behalf at the first trial.

2. A person acquitted of an offense may always be prosecuted for perjury based upon testimony given in his own defense, without regard to the nature of the testimony even though the two verdicts are logically inconsistent.

3. A person acquitted of an offense may not be prosecuted for perjury based upon testimony given in his own defense if a conviction of perjury would necessarily import a contradiction of the acquittal.

4. A person acquitted of an offense may not be prosecuted for perjury based upon testimony given in his own defense if it appears from the record that the fact finder probably passed upon the credibility of the testimony in question in order to reach its verdict of acquittal.

5. A person acquitted of an offense may not be prosecuted for perjury based upon testimony given in his own defense unless the state introduces evidence at the perjury trial which was not available to the fact finder at the first trial and which independently tends to establish that defendant committed perjury while testifying in his own behalf.

tion to issue preclusion."[2] The majority opinion concludes that the State "can proceed with the charge of perjury. . .if the circuit judge finds that the new evidence proffered by the State satisfies"[3] the newly created narrow newly discovered evidence rule "based on the longstanding rule governing the granting of a new trial because of newly discovered evidence in a criminal case."[4] The majority opinion would require the State to establish before the circuit court the elements of the narrow newly discovered evidence rule before proceeding with the perjury charge.

¶ 29. Although I agree with the majority opinion that resolving the double jeopardy and truthful testimony interests in the present case and similar perjury-after-acquittal cases is difficult, I cannot join the majority opinion because it does not adequately assist litigants or the courts in resolving this troublesome issue and does not reach the correct result in the present case.

¶ 30. First, the majority opinion does not tell us when its narrow newly discovered evidence rule comes into play. Although the majority opinion characterizes

---

[2] Majority op. at ¶ 23. See Wis. Stat. § 805.15 (1999–2000) governing motions for new trial based on newly discovered evidence.

[3] Majority op. at ¶ 26.

[4] Majority op. at ¶ 23. These requirements are set forth in *Lock v. State*, 31 Wis. 2d 110, 117, 142 N.W.2d 183 (1966), as follows:

> (1) The evidence must have come to the moving party's knowledge after a trial; (2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony which was introduced at the trial[;] and (5) it must be reasonably probable that a different result would be reached on a new trial.

its narrow newly discovered evidence rule as an exception to issue preclusion, the majority opinion does not discuss issue preclusion in the context of the present case. Does the narrow newly discovered evidence rule come into play in all cases in which an acquitted defendant is charged with perjury, or only in those cases in which issue preclusion exists? The State proposes the newly discovered evidence rule to "only apply after the court has determined that collateral estoppel would normally bar a subsequent perjury prosecution."[5] For purposes of applying the newly created narrow newly discovered evidence exception to issue preclusion in the present case, the State assumes that the "perjury prosecution would require relitigation of a factual issue decided in his first trial; namely whether he was the driver of his pickup truck. . . ."[6]

¶ 31. The majority opinion is silent about this question of issue preclusion, even though both parties have identified it as a central question for this court. The majority opinion does not identify the issues involved in the perjury prosecution or address whether these issues were litigated and determined by the fact

--------

[5] State's Brief at 12.

[6] The State also argues in the alternative that the circuit court in this case should review the entire record of the prior criminal traffic prosecution to determine whether the perjury claim is barred by issue preclusion. The State argues that the jury did not necessarily find that the defendant was telling the truth when he testified. The jury could have disbelieved the defendant but found that the State did not prove beyond a reasonable doubt that the defendant was driving the vehicle. The State concludes: "Since the issue to be litigated at the perjury trial is whether [the defendant] told the truth at his drunk driving trial, his perjury prosecution should not be barred by collateral estoppel [that is, issue preclusion]." State's Brief at 39.

finder in rendering the acquittal in the initial trial. The doctrine of issue preclusion in perjury-after-acquittal cases may often be difficult for lower courts to apply, especially since the majority opinion offers no guidance on this score.

¶ 32. Second, the narrow newly discovered evidence exception needs to be explained more fully. It appears that the majority's "narrow" new evidence test means that the test will be applied "narrowly" to protect acquitted defendants from subsequent perjury prosecutions. The majority opinion expressly says that the State should only be able to try a defendant for perjury in very limited circumstances.[7]

. ¶ 33. Less clear is what the majority opinion means when it states, as a prong of the narrow newly discovered evidence exception, that "the new evidence must be material to the issue."[8] Material to what issue? An issue at the first trial for the substantive offense? That the false testimony necessarily constituted a material basis for the acquittal? An issue at the second trial for perjury? How does this prong in the narrow newly discovered evidence exception to issue preclusion fit with the fifth element of the substantive offense of perjury that requires that the false statement be material?[9]

---

[7] Majority op. at n.14.

[8] Majority op. at ¶ 23. Material facts are those that are of consequence to the merits of the litigation. *See* Wis. Stat. § 904.01 (1999–2000); *Johnson v. Kokemoor*, 199 Wis. 2d 615, 635, 545 N.W.2d 495 (1996).

[9] Wis. Stat. § 946.31 (1999–2000); *see also* Wis JI—Criminal 1750: Perjury (1995) ("A material statement is one which tends to prove or disprove any fact that is of consequence to the determination of the proceeding in which the statement was made.").

¶ 34. The majority opinion also does not explain why it has omitted the fifth and last prong of the narrow newly discovered evidence rule applicable to a defendant's motion for a new trial. The fifth prong requires that the new evidence would probably change the result of the first trial. In advocating this new evidence test, the State's brief asserts, without explanation, that this fifth prong is not applicable. Instead the State seems to substitute for the fifth prong a probable cause standard. The State's brief contends that "in order for the perjury complaint to state probable cause, the new and pre-existing evidence stated in the perjury complaint must provide probable cause to believe that the defendant committed perjury at his or her prior trial."[10] However, the majority opinion is silent about both the omitted fifth prong and the probable cause prong suggested by the State.

¶ 35. I would not permit the perjury charge to proceed in the present case even if I were to apply the "narrow newly discovered evidence rule" the majority opinion adopts, as best I understand it. The State's perjury complaint sets forth the defendant's testimony at trial that he was not the driver. It also has as an attachment an unsworn statement by a witness asserting that before the defendant's trial the defendant admitted at a local tavern that he was driving the vehicle.

¶ 36. At trial the State attempted to introduce an unsworn statement by the other occupant of the vehicle

For a discussion of the issue of materiality in perjury prosecutions, see James A. Schellenberger, *Perjury Prosecutions After Acquittals, The Evils of False Testimony Balanced Against the Sanctity of Determinations of Innocence,* 71 Marq. L. Rev. 703, 744–45 (1988).

[10] State's Brief at 34.

(who did not appear at trial) that the defendant was driving the vehicle. When the trial court ruled this evidence inadmissible, the State opted to go forward with its prosecution despite being left with almost no evidence of the defendant's guilt.

¶ 37. Now it appears that the prosecution is trying to recover from its initial failure to convince the trier of fact at the first trial of the falsity of the defendant's testimony by relying on evidence similar to evidence it was unable to introduce at trial. The new unsworn statement is cumulative evidence; it is the same type of evidence the State attempted to introduce at trial. This rehashing of the evidence on an issue that was apparently decided in the first trial is, I think, prohibited by issue preclusion and does not fall within the narrow newly discovered evidence exception.[11]

¶ 38. In cases such as this one involving the constitutional issue of double jeopardy, I would, adhering to the majority opinion's repeated expression of its narrow exception to issue preclusion and the view expressed in Justice Bablitch's dissent, impose a heavy burden on the State at this initial stage of the proceeding to justify its right to proceed with the perjury prosecution. Under the circumstances of this case I would conclude, as a matter of law, that the written complaint, resting on yet another unsworn statement, does not provide probable cause to believe that the defendant committed perjury at the prior trial. Probable cause in a perjury prosecution after acquittal

---

[11] *See United States v. DiFrancesco*, 449 U.S. 117, 128 (1980) (stating that one of the express purposes of double jeopardy protection is to prevent the prosecution from having "another opportunity to supply evidence which it failed to muster in the first proceeding") (quoting *Burks v. United States*, 437 U.S. 1, 11 (1977)).

should be a high hurdle for the State. As we all know, probable cause is not a single defined standard; there are degrees of probable cause.[12]

¶ 39. For the reasons set forth, I dissent.

¶ 40. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

¶ 41. WILLIAM A. BABLITCH, J. *(dissenting).* The majority adopts a rule that allows the State to try an acquitted defendant for perjury if the State produces "newly discovered evidence" consisting of nothing more than some third person saying, in essence, "The acquitted defendant told me that he lied under oath." This type of evidence does not contain a sufficient degree of reliability to overcome the interest of finality that underlies issue preclusion and double jeopardy. I would allow the trial of an acquitted defendant for perjury in cases where the issue of fact central to the prosecution was necessarily determined in the former trial, but only when the "newly discovered evidence" contains a high indicia of reliability. This evidence does not.

¶ 42. In *Ashe v. Swenson*, 397 U.S. 436, 443 (1970), the United States Supreme Court recognized the doctrine of issue preclusion as an "extremely important principle in our adversary system of justice." This doctrine provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* However, "[i]n the context of a perjury indictment relating to testi-

---

[12] *See County of Jefferson v. Renz*, 231 Wis. 2d 293, 321, 603 N.W.2d 541 (1999) (Abrahamson, C.J., concurring) (diagram showing different degrees of probable cause).

mony given at a former trial on a substantive charge, the doctrine of [issue preclusion] does not bar the perjury prosecution unless the issues of fact central to that prosecution were necessarily determined in the former trial." *United States v. Haines*, 485 F.2d 564, 565 (7th Cir. 1973) (citing *United States v. Williams*, 341 U.S. 58 (1951); *United States v. Nash*, 447 F.2d 1382 (4th Cir. 1971); *Adams v. United States*, 287 F.2d 701 (5th Cir. 1961)). Thus, in some cases, the doctrine serves as a limit on the State's ability to take a "second shot" at a defendant. *See Nash*, 447 F.2d at 1385–86. In this respect, the doctrine of issue preclusion serves the same purpose as the Double Jeopardy Clause of the Fifth Amendment. *See United States v. DiFrancesco*, 449 U.S. 117, 127–28 (1980) (noting that the underlying idea of a constitutional prohibition against double jeopardy is that " 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' ") (quoting *Green v. United States*, 355 U.S. 184, 187–88 (1957)).

¶ 43. The doctrine of issue preclusion serves an important function in limiting subsequent prosecutions of acquitted defendants in some cases. The importance of this doctrine is demonstrated in cases where it may serve to limit a subsequent prosecution brought in bad faith by a prosecutor. Equally significant, the doctrine may also limit subsequent prosecutions brought about by meritless "newly discovered evidence" submitted by a disgruntled victim or another person seeking revenge against the acquitted

defendant for any number of motives. Certainly, the majority opinion recognizes that harassment may, to a certain extent, exist. However, my concern is that the majority's "newly discovered evidence" exception does not adequately protect an acquitted defendant's interest in finality recognized in the principles of issue preclusion and double jeopardy, particularly in cases involving the type of evidence presented here.

¶ 44. Despite the importance of the doctrine of issue preclusion, I also acknowledge that perjury is detrimental to the truth-seeking function of our system of justice and should not be tolerated in our pursuit of reliable verdicts. As a result, I would not conclude, as some courts have, that a person acquitted of an offense may not be prosecuted for perjury based on testimony that he provided in his own defense, even though a conviction of perjury would necessarily implicate the issue tried at the first trial. *See Nash*, 447 F.2d at 1385–86; *United States v. Plaster*, 16 F. Supp. 2d 667, 672 (W.D. Vir. 1998). Instead, I conclude, as the majority has, that a "newly discovered evidence" exception to the doctrine of issue preclusion is necessary to serve these competing policy interests.

¶ 45. However, the majority adopts a "newly discovered evidence" test that is similar to cases where a defendant, subsequent to his conviction, may seek a new trial based on his discovery of new evidence calling his conviction into doubt. *See State v. McCallum*, 208 Wis. 2d 463, 473–74, 561 N.W.2d 707 (1997); *State v. Carnemolla*, 229 Wis. 2d 648, 656, 600 N.W.2d 236 (Ct. App. 1999). Certainly, this test provides adequate parameters for allowing defendants to challenge their own convictions. This test, however, is inadequate to protect a defendant who has been acquitted of a crime from being prosecuted again based on an issue that was

already determined at the first trial. The State should only be able to retry a defendant in very limited circumstances, and therefore, a test should be adopted with more stringent requirements than the test that is used by the majority.

¶ 46. Under the majority's test, a prosecutor may be able to pursue a perjury claim in instances where the "newly discovered evidence" amounts to nothing more than testimony from a disgruntled party or an ill-motivated person whose testimony merely contradicts the defendant's testimony at his first trial. Unless there is something more, and the State here does not suggest that there is anything more, any subsequent perjury prosecution will amount to nothing more than a swearing contest between the State's witness and the defendant, which requires another determination of credibility by the jury. As a result, defendants are not secure with an acquittal; they have no sense of finality. Under this test, anyone can make a damning statement against an acquitted defendant, and the acquitted defendant is once again subjected to prosecution. As a result, an acquitted defendant who has testified at his own trial will live in daily fear of further prosecution.

¶ 47. In short, I conclude that the "newly discovered evidence" presented here does not present a high enough degree of reliability to offset the competing policy concern of finality.

¶ 48. The majority primarily relies on *State v. Bolden*, 639 So. 2d 721 (La. 1994), in concluding that a new evidence exception should be adopted. In *Bolden*, the defendant was prosecuted and acquitted in a Louisiana state court of second degree murder in March of 1987. *Bolden*, 639 So. 2d at 721–22. Approximately five years later, the defendant confessed to the murder dur-

ing prosecutorial questioning on another matter in New Jersey. *Id.* at 722. As a result of this statement, the defendant was charged in Louisiana for perjury based on his statements denying guilt in the 1987 murder trial. *Id.* at 722–23. The *Bolden* court concluded:

> [T]he state in good faith has obtained new and additional evidence that was not previously available to it indicating that defendant testified falsely under oath during the former trial. Under these circumstances, applying the doctrine of [issue preclusion] with 'realism and rationality' as required by *Ashe*, we believe that the state should not be barred from prosecuting defendant for perjury.

*Id.* at 726. The *Bolden* court adopted this new evidence exception based on dicta from other courts and did not provide any further detail or guidance on how to determine whether evidence was "new or additional evidence." *Id.* at 725–26.

¶ 49. The "new and additional evidence" at issue in *Bolden* is much different than the "newly discovered evidence" at issue in Canon's case. Such a direct admission of guilt by the defendant in *Bolden* is highly reliable. Here, however, the evidence presented involves hearsay testimony that is being presented to once again impeach the defendant's testimony from his first trial. The State should not be allowed to proceed with a perjury trial based on such testimony when the issue was adjudicated in a former trial. Instead, the majority's test for "newly discovered evidence" should specifically exclude such evidence. Only highly reliable evidence, such as recorded admissions of guilt from a defendant or, alternatively, reliable tangible evidence that was not available at trial should allow the State to proceed with a perjury prosecution. Such tangible evi-

dence may include items such as a document or weapon that provides clear evidence to show that the defendant committed perjury. The evidence may also include tangible evidence brought about by a recent technological advance, such as DNA evidence that directly contradicts a defendant's denial of guilt. Limiting our "newly discovered evidence" exception in this respect will protect a defendant's interest in finality, while at the same time permitting a prosecution for perjury on a previously determined issue.

¶ 50. Thus, under any "newly discovered evidence" exception that I would adopt, the testimony from Que Sada would not qualify as "newly discovered evidence." Testimony alone would never qualify because it would lead to nothing more than a swearing contest between the defendant and the witness on the same issue decided at the first trial. In this case, the State has not presented any other evidence in support of the perjury complaint. As a result, under such an exception, this court could conclude as a matter of law that Que Sada's testimony would not qualify as "newly discovered evidence." Remand to the circuit court would be futile because the exception would specifically exclude such testimony. Dismissal of the complaint would then be appropriate if issue preclusion applied.

¶ 51. In this case, I believe that the circuit court may have been correct in concluding that the issue was decided at the first trial, but I am troubled by the circuit court's failure to review the entire trial transcript in making its decision. Such a difficult decision must be made in view of the entire transcript. Unfortunately, the majority opinion neglected to provide any guidance to future courts to aid in their determination of whether an issue, which forms the basis for a criminal perjury complaint, was previously determined at trial.

In her dissent, Chief Justice Abrahamson appropriately addressed this as a real problem with the majority's opinion. I share her concern.

¶ 52. In the end, however, I agree with the result reached by Chief Justice Abrahamson in her dissent. In short, the perjury complaint against Canon lacks probable cause because it is based on the unsworn testimony of Que Sada. Therefore, the complaint should be dismissed, and the court of appeals' decision should be affirmed. Accordingly, I respectfully dissent.

¶ 53. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissenting opinion.